ATTORNEYS FOR APPELLANT
Stephen T. Owens
Public Defender of Indiana

Rodney Pol, Jr.
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED
Mar 12 2013, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 18S05-1206-PC-304

CURTIS A. BETHEA,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below),*

Appeal from the Delaware Circuit Court, No. 18C01-0805-PC-3
The Honorable Marianne L. Vorhees, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 18A05-1107-PC-416

**March 12, 2013**

**David, Justice.**

In his Petition for Post-Conviction Relief, Curtis Bethea argues he received ineffective assistance of counsel for failure to challenge the aggravating factors used by the trial court in determining his sentence. Specifically, he claims a trial court cannot aggravate a defendant's

sentence with an essential element of a charge that was dismissed pursuant to a plea agreement. We hold that the trial court finding that the injury suffered by the victim to be an aggravating factor was proper despite the plea agreement that dismissed that count.

**Facts and Procedural History**

In December 2005, Curtis Bethea, Jerry Gore, Eddie Wilson, and Tyler Seaton went to the home of Angela Dailey and Jason Gates. Bethea and Gore entered the home wielding guns. Gates was "pistol whipped" and Dailey was pulled out of bed and thrown to the floor. Bethea bound Gates' arms with tape. Gore and Bethea ransacked the house looking for money and drugs.

Bethea was arrested and charged with nine counts which included: Count I, Class A felony Burglary Resulting in Bodily Injury; Count II, Class B felony Armed Robbery of Gates; Count III, Class B felony Armed Robbery of Dailey; Count IV, Class B felony Criminal Confinement of Gates; Count V, Class B felony Criminal Confinement of Dailey; Count VI, Class C felony Intimidation of Gates; Class VII, Class C felony Intimidation of Dailey; Count VIII, Class D felony Auto Theft of Dailey's vehicle; and Count IX, Class B felony Criminal Confinement of Dailey.

In February 2007, Curtis Bethea pled guilty to two counts, Count II, Class B felony Armed Robbery of Gates, and Count V, Class B felony Criminal Confinement of Dailey. His plea agreement left the sentences open to the discretion of the trial court. At the sentencing hearing, Bethea testified that his father was an alcoholic and drug user who was physically, mentally, and sexually abusive to Bethea, his mother, and his siblings. Bethea lived in various foster homes from the age of six, and in juvenile facilities in New York and Virginia. Bethea further testified that he used drugs and alcohol since the age of nine, including PCP, marijuana, cocaine, embalming fluid, heroin, inhalants, and acid. To counter the mitigating evidence, the State presented evidence of Bethea's extensive criminal history and testimony of one of the victims. The trial court noted the harm, injury, and loss suffered by the victims was significant.

The trial court determined that the aggravating circumstances outweighed the mitigating circumstances and imposed the maximum sentence of twenty years on each count. The court

ordered the sentences served consecutively which resulted in an aggregate sentence of forty years, the maximum allowed by the plea.

Bethea appealed his sentence, but the Court of Appeals affirmed the trial court. Bethea v. State, No. 18A02-0703-CR-247, 2007 WL 3378461 (Ind. Ct. App. 2007) (memorandum decision). Bethea then filed for post-conviction relief, arguing ineffective assistance of counsel by both trial counsel and appellate counsel. Following a hearing, the trial court denied Bethea relief. On appeal to the Court of Appeals, Bethea argued the post-conviction court erred in finding that appellate counsel's failure to raise an Indiana Appellate Rule 7(B) claim and a challenge to the improper factors did not result in ineffective assistance of counsel. Secondly, Bethea argued the post-conviction court erred in finding that trial counsel's failure to object to and tender evidence negating an unsupported aggravating factor did not result in ineffective assistance of counsel. The Court of Appeals issued a split decision affirming the trial court.

## I. Discussion

In the petition for post-conviction relief, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." Id. To prevail, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993). We do not defer to a post-conviction court's legal conclusions; however, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—'that which leaves us with a definite and firm conviction that a mistake has been made.'" Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (quoting State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997), cert. denied, 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998)).

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced him. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984)). To satisfy the first prong, the defendant must show deficient performance: "representation that fell below

3

an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002) (citing Strickland, 466 U.S. at 687–88)). To satisfy the second prong, the defendant must show prejudice: a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. There is a strong presumption that counsel rendered adequate service. Coleman at 272. There is nothing in the record that rebuts this presumption.

We agree with the Court of Appeals and summarily affirm their analysis that "Bethea has not persuaded us that trial counsel's [strategy] was not an acceptable strategy." Bethea v. State, 964 N.E.2d 255, 264 (Ind. Ct. App. 2012). We turn our focus to the adequacy of representation Bethea received from appellate counsel.

## II. Appellate Counsel

There are three categories of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001). We have previously stated that

> [w]hen a petitioner claims the denial of effective assistance of appellate counsel because counsel did not raise issues the petitioner argues should have been raised, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. But this does not end our analysis. Even if we determine that counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail.

Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006) (internal citations omitted). We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues." Gray v. State, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006).

The issue before us is whether Bethea was prejudiced by appellate counsel's failure to cogently challenge the aggravating factors in the underlying sentence. Sentencing decisions are reviewed for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). An

abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. Id. If the trial court has used improper aggravating factors, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491.

The trial court found the following circumstances supporting sentence enhancement:

(1) Defendant has the following convictions in Virginia: Obstruction of Justice, March 14, 2001 (#810GC010075700); and Petit Larceny, March 21, 2001 (#710CR0100457900). The Court gives these two convictions minimal weight as they appear similar to misdemeanor offenses in Indiana, and they are not similar to the offenses involved in this case.

(2) Defendant was convicted of two counts of Accessory after the Fact in a felony, and Defendant was sentenced as a misdemeanor in both counts, in Norfolk, Virginia, #711GC0101928900, on December 11, 2001. The Court gives these convictions some weight; although they were entered as misdemeanor convictions, the charges involved two counts of Robbery, and Defendant is convicted of Robbery in this case.

(3) Defendant has a conviction for Possession with Intent to Distribute Cocaine as a felony, in Norfolk, Virginia (#CR01004579 and CR 02000494); on May 31, 2002, Defendant received a three year suspended sentence and was placed on probation. The Court gives this conviction significant weight, as it relates to a crime that could have been a significant felony in Indiana, and the conviction reflects a pattern developing of Defendant's continuing involvement in criminal activity.

(4) Defendant has two adjudicated probation violations related to #CR01004579, in Norfolk, Virginia. The Court gives these violations (to which Defendant admitted in the Virginia proceedings) significant weight, as Defendant's actions show a pattern of unwillingness to follow rules and directions from lawful authority. (These probation violations were filed on April 22, 2003, and August 6, 2004.)

(5) Defendant has an active warrant from the State of Virginia in #CR01004579, involving a probation violation (the third) in that case. The Court gives this factor some weight, as Defendant's failure to appear in Virginia and answer to the allegations demonstrates disdain for legal authority and his unwillingness to follow court orders. Defendant was on probation in this Virginia case when he committed the offenses in this case.

(6)    Defendant has several pending warrants from the State of New York. Although the cases are not convictions, the Court gives these warrants some weight, as they show Defendant's continued pattern of involvement in the criminal justice system, through March 2, 2005, and they further demonstrate Defendant's disdain for legal authority and unwillingness to follow court orders.

(7)   Defendant knowingly committed these offenses in the presence of a person under 18 years old; Defendant used [T.S.], then 17 years old, to gain access to the victims' residence.  The Court gives this factor substantial weight, as Defendant involved a juvenile in the crimes, and this could lead to even more criminal activity on her part in the future.  Defendant knew he could not gain access to the victims' residence without the assistance of the juvenile.

(8)  The harm, injury, and loss suffered by the victims was significant and greater than the otherwise anticipated by the offenses; in addition to being armed at gunpoint, the male victim was beaten and "pistol whipped" and reports the beating has resulted in his seizure disorder causing more seizures; in addition to being confined at gunpoint, the female victim was injured by being pulled out of bed and thrown to the floor, resulting in medical treatment.  Defendant committed the offenses inside the victims' residence.  The Court gives this factor very significant weight, as Defendant acted in a manner more violent than required for the offenses and caused significant injuries to the victims.

Ex. 266-68.

The court also considered factors supporting a reduction in the sentence:

(1)  Defendant stated he is remorseful, but the Court gives this factor minimal to no weight, as Defendant has had numerous opportunities to rehabilitate himself and has not taken advantage of them.  Further, Defendant denied having a gun; denied knowing what was going to happen when he went to the victims' house; and does not want to admit what actually happened.

(2)  Defendant assumed responsibility for his actions and pleaded guilty; however, the Court gives this factor minimal to no weight, as Defendant received a significant benefit from the plea agreement, i.e., the State's agreeing to dismiss seven other counts, including a Class A felony charge.

(3)  Defendant does have some history of ADHD, substance abuse, and emotional problems related to being abused; however, the Court gives this factor minimal to no weight, as Defendant had numerous opportunities to seek treatment for these problems and never voluntarily sought treatment on his own or while he was on probation.  Further, the Court notes Defendant was fully involved in these offenses as a principal, and his alleged mental and emotional problems did not affect his understanding of what he was doing or his ability to control his behavior.  His alleged mental and emotional problems do not limit his ability to

6

function. The Court finds no nexus between the alleged illnesses and the offenses in this case.

(4) Long-term incarceration could cause an undue hardship to his dependents; however, the Court gives this factor no weight. Defendant had little to no contact with his dependents after he moved to Indiana, and there is no evidence he was providing them any financial support.

(5) Defendant does have some history of maintaining gainful employment; however, the Court gives this factor no weight, as Defendant's criminal history suggests he is able to maintain employment and violate the law at the same time.

Ex. 266-68.

Bethea challenges several of the trial court's findings of aggravators which enhanced his sentence. Bethea first challenges the trial court's finding that he knowingly used a juvenile in the commission of the crime. The State concedes that the evidence does not show Bethea knew T.S. was a minor; however, as the Court of Appeals noted, "Bethea knew that he was using a young woman to trick the victims into opening their home to two armed robbers, and this could properly be considered as part of the nature and circumstances of the offense." Bethea at 265. As the post-conviction court pointed out, it was proper for the trial court to conclude that Bethea used a juvenile to help him commit a violent crime, which could lead the juvenile to become involved in more criminal activity in the future.

The trial court erred in stating Bethea's criminal history by finding that he had been convicted of possession of cocaine with intent to distribute, when in fact he had pled guilty to the lesser included offense of possession of cocaine. However, we find this error is not significant as possession of cocaine is still a Class D felony in Indiana, which can be elevated to an A, B, or C felony with certain facts. In the context of Bethea's extensive criminal history, we do not believe this is a significant factor. The trial court's error did not change the fact that Bethea had in fact been convicted of a felony for possessing cocaine, which was also part of a pattern of Bethea's involvement in criminal activity.

Bethea also argues that the record does not support that he received "extensive services" as a juvenile. We have previously held that evidence of a difficult childhood is entitled to little, if any, mitigating weight. Coleman v. State, 741 N.E.2d 697, 700 (Ind. 2000); Blanche v. State, 690 N.E.2d 709, 715 (Ind. 1998); Peterson v. State, 674 N.E.2d 528, 543 (Ind. 1996); Loveless v.

7

State, 642 N.E.2d 974, 976–77 (Ind. 1994). The trial court was correct in pointing out that Bethea has been in and out of jail most of his adult life. While the record is inconclusive on any mental health conditions Bethea may have, the Court of Appeals wrote, "Bethea's adult years show a disdain for the law, failure to benefit when shown leniency, failure to take proactive steps to address his addictions, and a tendency to move from state to state rather than answer to pending criminal charges or probation violations." Bethea at 266.

### III. Guilty pleas and aggravating factors

The critical issue before us is whether the trial court erred by treating the victim's injury as an aggravating factor when the injury was an element of the burglary charge that was dismissed pursuant to his plea agreement. Bethea cites Farmer v. State, 772 N.E.2d 1025 (Ind. Ct. App. 2002), and Roney v. State, 872 N.E.2d 192 (Ind. Ct. App. 2007) in support of his argument that the injury to the victim can't be used as an aggravating factor, since it is an essential element of a dismissed charge.

The legal basis for this line of case law begins with Hammons v. State, 493 N.E.2d 1250 (Ind. 1986). Hammons was tried for murder, but found guilty by jury for the lesser included offense of voluntary manslaughter. During sentencing, the trial court repeatedly declared the error of the jury verdict, and that Hammons had in fact committed murder.[1] The trial court imposed the maximum penalty for manslaughter. We reversed, holding the trial court's sentencing was not merely an act of skepticism with the jury verdict, but was more like an act of compensation to make up for the jury verdict, which was tantamount to sentencing the defendant for the crime for which he was acquitted. Id. at 1253.

---

[1] At the first sentencing hearing in Hammons, the trial court made the following statement:

> As indicated, I was the trial Judge on this matter and while the jury did return a verdict of a lesser included on Count One, Manslaughter, rather than the Murder count, I feel there is ample evidence to justify a finding on the murder count itself. Therefore, Mr. Hammons, the Court is going to sentence you at this time to the custody of the Indiana Department of Correction on Count One, finding aggravation by reason that a reduced or the presumptive sentence would depreciate the seriousness of this particular offense, a period of twenty years.

Hammons, 493 N.E.2d at 1251

Out of Hammons arose a line of Court of Appeals cases which attempted to interpret and apply Hammons, the first being Conwell v. State, 542 N.E.2d 1024 (Ind. Ct. App. 1989). Conwell had been charged with burglary as a Class B felony, but pled guilty, pursuant to a plea agreement, to burglary as a Class C felony, and left sentencing to be decided by the court. [Conwell Record p. 50.] The trial court sentenced Conwell to a term of eight years in the Indiana Department of Correction, with five years executed and three years suspended to probation. [Conwell Record p. 54.] Conwell argued the trial court improperly considered as an aggravator that Conwell burglarized a dwelling, the distinguishing element between the Class C and Class B felony burglary. [Conwell Record p. 54.] The Court of Appeals held that the sentencing judge could not find as an aggravator the fact that the burglary had occurred at a residence because that was the distinguishing element between the Class B and Class C offenses of burglary. Id. at 1025. In other words, the Court of Appeals found that since defendant did not plead guilty to the offense which included that element, the element could not be utilized to enhance the sentence of the lesser included offense.

Carlson v. State, 716 N.E.2d 469 (Ind. Ct. App. 1999) is the next case in this progeny. Carlson is yet another case involving a plea agreement, and involves a defendant charged with dealing in cocaine. Carlson was charged in Count I with Class A felony dealing in cocaine, alleging possession with intent to deliver cocaine. Count II was charged as a Class B felony alleging actual delivery. Id. at 470. Pursuant to a plea agreement, the State dismissed the Class A felony and agreed to a sentence cap of fifteen years. Id. At sentencing, the trial court identified the amount of cocaine that Carlson possessed as an aggravating factor. The presentence investigation conducted by probation was entered into evidence, as was a sentencing memo prepared by defendant's counsel. [Carlson Record p. 410–12.] The State presented evidence in the form of calling one of the investigative police officers to testify about his investigation. [Carlson Record p. 415–458.] The Court of Appeals held that the trial court may not attempt to sentence a defendant as if he had pled guilty to the greater offense by using the distinguishing fact as an aggravating factor. Id. at 473. The Court of Appeals analysis did not so much as discuss the Hammons case, merely citing to it in a string cite of the Conwell opinion it relied upon for its holding.

Farmer was the next case considered, and it involved a defendant who was charged with attempted murder, burglary resulting in bodily injury, intimidation, and resisting law enforcement. Farmer, 772 N.E.2d at 1026. The factual basis Farmer pled guilty to included the facts that Farmer entered the victim's home and got into an argument. Farmer struck the victim from behind in the head several times and then began to strangle the victim to the point the victim turned blue in the face. Officers arrived, and ordered Farmer to stop choking the victim, but he did not until he was kicked twice in the face by officers. As Farmer was being restrained, he twice said he was still going to get the victim, and that this was not over. [Farmer Record p. 13–14.] Farmer pled guilty to attempted murder, and the State dismissed the remaining charges. At sentencing, the trial court considered the presentence investigation report, as well as testimony from the victim and the defendant, each of whom testified about the incident. In sentencing Farmer, the trial court found as aggravators that the offense occurred in the victim's home, that he threatened the victim, and that he disobeyed an officer's command. The Court of Appeals held the facts that Farmer entered the victim's home without permission, disobeyed the officer's command to stop choking the victim, and threatened the victim are facts comprising the dismissed charges. The Court of Appeals held that if Farmer "were sentenced more harshly in reliance upon these facts, he would not receive the full benefit of his plea agreement." Farmer, 772 N.E.2d at 1027.

Roney is the most recent case that traces its roots back to Hammons. It involved a robbery and murder. Roney pled guilty to murder, and the State agreed to dismiss the felony murder charge and not to file any additional charges relating to the incident. Roney, 872 N.E.2d at 197. The factual basis establishing Roney's convictions included himself and three other friends driving to the victim's apartment and waiting for him to return. They broke into the victim's apartment and broke into his safe. Later, the victim came home and after wrestling, a gun went off, striking the victim. The victim was eventually tied up, and Roney hit the victim in the head with a fire extinguisher, leading to his death. [Roney Record p. 1–30.] At sentencing, the Court heard evidence from the Presentence Investigation Report, the victim's mother, multiple statements from family, and finally a statement from Roney. [Roney Record p. 30–40.] Among the aggravating factors the trial court found were that Roney could have been charged with several additional offenses, such as robbery and criminal confinement. The Court of Appeals held that the trial court had effectively circumvented the plea agreement by considering

uncharged conduct when the State had agreed to not file additional charges. Roney, 872 N.E.2d at 201. Again, Hammons was not cited, but Farmer and Carlson, relying on Hammons, were cited for this proposition.

The time has come for us to review this historical application of Hammons and determine whether or not Hammons was intended to apply or should apply in guilty plea cases.

"A criminal defendant has no constitutional right to engage in plea bargaining." Coker v. State, 499 N.E.2d 1135, 1138 (Ind. 1986). The State has no duty to plea bargain. Id. Furthermore, a defendant's acceptance of a proposed plea bargain does not create a constitutional right to have the plea bargain specifically enforced. Id. However, a plea agreement is a contract, "an explicit agreement between the State and defendant," which, if accepted by the trial court, is binding upon all parties. Griffin v. State, 756 N.E.2d 572, 574 (Ind. Ct. App. 2001) (citing Smith v. State, 717 N.E.2d 239, 241 (Ind. Ct. App. 1999)).

Each party bargains to include or exclude certain terms and each party receives substantial benefits by arriving at an agreement. Wright v. State, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998). "When a plea agreement rests in any significant degree on a promise by the prosecutor, so that the promise can be said to be part of the inducement or consideration for the plea, such promise must be fulfilled." Id. "Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate safeguards which insure the defendant what is reasonably due in the circumstances." Epperson v. State, 530 N.E.2d 743, 745 (Ind. Ct. App. 1988). "Promises which induce guilty pleas must be fulfilled in order to satisfy the voluntariness of the guilty plea standard." Ryan v. State, 479 N.E.2d 517, 519 (Ind. 1985). The State's failure to adhere to a promise that induced a guilty plea would constitute a breach of the plea agreement. Epperson, 530 N.E.2d at 745.

Bethea bargained for the dismissal of seven of the nine counts with which he was charged. He bargained to avoid a trial and the risk of seven potential guilty convictions on his record. Bethea, together with his counsel, made a risk assessment, balancing the evidence likely to be presented as well as the possibility of being found guilty on all nine charges with the sentencing possibilities accompanying such convictions. This included a Class A felony count of burglary resulting in bodily injury, three Class B felonies, two Class C felonies, and one Class D

11

felony. The State bargained to ensure a certain conviction on two Class B felonies, Armed Robbery and Criminal Confinement. Once this plea agreement was accepted by the trial court, the four corners of this plea agreement encapsulated the defendant's degree of criminal liability for which he could be convicted. This particular bargain set forth the crimes for which Bethea could be convicted and the maximum sentence he could receive. The written plea agreement did not limit what the State could offer as aggravating factors or what the defendant could submit as mitigating factors. In other words, it did not limit the sentencing evidence, only the maximum sentence.

The State could have bargained for a conviction on the Class A felony of burglary resulting in bodily injury and dismissed the remaining eight counts. The term of imprisonment for such a conviction would have been between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Instead, the Defendant received the benefit of pleading guilty to two Class B felonies with dismissal of the remaining seven counts. The Class B felony sentence has a range of between six and twenty years, with an advisory term of ten years. Id. § 35-50-2-5.

As Senior Judge Shepard wrote recently, "a defendant receives the full benefit of his bargain when multiple charges are dismissed in accordance with the agreement." Sexton v. State, 968 N.E.2d 837, 841 (Ind. Ct. App. 2012). Our opinion today seeks to clarify this issue for trial courts, and to eliminate the application to guilty pleas with plea agreements. Hammons was uniquely different than the cases decided by the Court of Appeals that followed in that Hammons did not involve a guilty plea. Our opinion today does not foreclose the possibility of the Defendant bargaining as to what can and cannot be potential aggravating and mitigating factors. It is well within the purview of contract law, and consequentially, as mentioned above, the law as it relates to plea bargains, for the Defendant to bargain and the State to accept a plea bargain that forecloses the possibility of the trial court using enhancements from the underlying charges that were dismissed, or from the original charges from which a lesser included plea is taken. However, if a plea bargain lacks such language, we hold it is not necessary for a trial court to turn a blind eye to the facts of the incident that brought the defendant before them. As we stated in Anglemyer v. State, "the nature and circumstances of the crime as well as the manner in which the crime is committed" is a valid aggravating factor. Anglemyer v. State, 868 N.E.2d at 492.

In this case, the court did not err by giving significant weight to the facts presented to it relating to the burglary and other dismissed charges. Although these facts share a relation with the elements of the dismissed Class A felony Burglary Resulting in Bodily Injury, the State's obligations under the plea agreement were fulfilled upon dismissal of the seven remaining counts and it owed the Defendant no further duty to omit these facts from the aggravating circumstances consideration. Both the State and Defendant agreed to this plea bargain.

"[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing Morgan v. State, 675 N.E.2d 1067, 1072 (Ind. 1996)). "Indiana has never adopted a mechanical approach to sentencing." Id. at 1224. Our holding today is in line with our history, and the spirit of Hammons. It has always been the case that

> [W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Individual judgments as to the proper balance to be struck among these considerations will necessarily vary from person to person, and judges, whether they sit on trial or appellate benches, are no exception. There is thus no right answer as to the proper sentence in any given case.

Cardwell, 895 N.E.2d at 1224.

We therefore do not find ineffective assistance of appellate counsel. Bethea has not demonstrated clear error, and we are not left with a firm conviction that a mistake has been made.[2] Ben-Yisrayl, 729 N.E.2d at 106.

## Conclusion

A plea agreement is voluntarily entered into between the State and the Defendant. It is a contract and when accepted by the trial court is binding. The parties are free to negotiate the terms and conditions of the plea agreement, and can agree to limit or otherwise exclude what may be considered by the trial court judge. Unless the evidence is forbidden by terms of the plea

---

[2] We also summarily affirm the Court of Appeals resolution of Bethea's Appellate Rule 7(B) challenge to the appropriateness of the sentence. The Court of Appeals was correct in writing "Bethea's arguments concerning Appellate Rule 7(B) review essentially mirror the arguments already addressed." Bethea, 964 N.E.2d at 269. We conclude, as did the Court of Appeals, that "Bethea was not prejudiced by appellate counsel's failure to challenge his sentence pursuant to Appellate Rule 7(B)." Id.

agreement, the trial court judge may consider all evidence properly before him.  Therefore, we hold that <u>Hammons</u> does not apply to cases involving plea agreements.  The post-conviction court is affirmed.

 Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.