**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 25 2013, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DANIEL E. WILKINS**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DANIEL E. WILKINS,                                )
                                                  )
    Appellant-Defendant,                     )
                                                  )
            vs.                          )       No. 02A05-1303-PC-117
                                                  )
STATE OF INDIANA,                                 )
                                                  )
    Appellee-Plaintiff.                      )

APPEAL FROM THE ALLEN SUPEIOR COURT
The Honorable Francis C. Gull, Judge
Cause No. 02D04-1004-PC-27

**October 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Daniel E. Wilkins, pro se, appeals the denial of his petition for post-conviction relief (PCR), in which he challenged his convictions for robbery, criminal confinement, and unlawful possession of a firearm by a serious violent felon, all as class B felonies. He presents the following restated issues for review:

1. Did Wilkins receive ineffective assistance of trial and appellate counsel?

2. Did the trial court err in failing to conduct an evidentiary hearing prior to ruling on Wilkins's PCR petition?

We affirm.

The underlying facts are that at approximately 10:20 a.m. on May 31, 2007, Wilkins entered a Fort Wayne restaurant, brandished a weapon, and demanded that the three employees then present tell him where the money was located. Wilkins ordered the three employees into the restaurant's bathroom, patted them down for cellphones, and asked again about the money. Wilkins eventually escaped with approximately $8500 in cash. He was convicted as set out above.

In Wilkins's direct appeal, this court set out the procedural history of the case culminating in those convictions, as follows:

> On July 6, 2007, the State charged Wilkins with robbery and criminal confinement. The State amended the charges on August 6, 2007 by adding a count of possession of a firearm by a serious violent felon. On September 5, 2007, Wilkins filed *pro se* a motion for an early trial pursuant to Indiana Criminal Rule 4(B). The trial court granted his request and scheduled a trial date for November 7, 2007.
>
> On October 2, 2007, with the consent of all the parties, the case was transferred to another trial judge. At a pretrial conference on October 11, 2007, the November 7 trial date was reconfirmed after defense counsel, the

2

State, and the trial judge discussed a scheduling conflict with another trial, that of Leon Kyles, which was set for the same date before a different judge in the same court. The same defense counsel and prosecutor were scheduled to appear in both cases. It was agreed that Wilkins's case would take priority because it was older. However, no one expressed an awareness of the fact that Kyles had requested an early trial on September 4, 2007, one day before Wilkins.

On November 7, 2007, Wilkins appeared for trial. At that time, the court continued Wilkins's trial due to court congestion as a result of Kyles's trial. Specifically, the court found that Kyles's trial took priority because he had lodged his request for an early trial before Wilkins. Without objection by the defendant, the court reset Wilkins's trial for February 12, 2008.

Subsequent to the November 7 court appearance, the trial court appointed new defense counsel for Wilkins. On February 1, 2008, Wilkins's new counsel filed a motion to dismiss and discharge pursuant to Indiana Criminal Rule 4(B). The trial court denied the defendant's motion on February 7, 2008. On February 12, 2008, the court declared a mistrial and reset the trial for February 20, 2008. A jury trial was held on February 20–21, and Wilkins was found guilty as charged. Wilkins now appeals.

*Wilkins v. State*, 901 N.E.2d 535, 536-37 (Ind. Ct. App. 2009), *trans. denied*.

Wilkins presented the following issue upon direct appeal: "Whether the trial court violated his right to a speedy trial when it delayed his jury trial on a finding of court congestion." *Id.* at 536. This court rejected Wilkins's argument that his speedy trial right had been violated, concluding first that he waived the issue by failing to object when the trial court set a trial date outside the seventy-day period prescribed by Indiana Criminal Rule 4(B). Secondly, we held that, waiver notwithstanding, Wilkins's argument was meritless because he failed to demonstrate that the trial court erred in delaying his trial on the basis of court congestion.

3

1.

In his amended PCR petition, Wilkins contended he received ineffective assistance of trial and appellate counsel in a number of ways. A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 1138 (quoting *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. There is a "strong presumption" that counsel rendered adequate service. *Id.* Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim. *See Young v. State,* 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134. "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 1138 (quoting *Fisher v. State,* 810 N.E.2d

4

674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 1138 (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000)).

Wilkins's first claim is that trial counsel rendered ineffective assistance in affirmatively causing the trial date to be set outside the seventy-day period prescribed in Ind. Crim. R. 4(B). This claim was fully litigated on direct appeal. Granted, in his direct appeal Wilkins did not couch his speedy-trial argument in terms of ineffective assistance of counsel. Rather, he claimed the trial court erred in setting a trial date outside the seventy-day limit. His claim of ineffective assistance of counsel in this regard is premised upon the fact that his attorney had another client who had also submitted a request for speedy trial, but had submitted it earlier than Wilkins. As it turned out, both trials were set for the same date, but before different judges. Counsel could not go forward with both trials on the same day, so the trial court reset Wilkins's trial for a later date – one that was outside the seventy-day limit. Wilkins's claim of error upon post-conviction, although not entirely clear, seems to be that trial counsel rendered ineffective assistance in failing to withdraw as Wilkins's attorney so that Wilkins could retain another attorney, who could then proceed with the trial on the originally scheduled date. Indeed, Wilkins invokes such terms and phrases as "conflict of

5

interest" and "disqualified" in presenting this argument. *Brief of Appellant* at 15 and 16, respectively. This was neither.

The setting of trials of two separate clients on the same date in front of two separate judges did not create a conflict of interest for Wilkins's attorney. Wilkins provides no authority for the proposition that counsel was *required* to withdraw his representation from Wilkins in order to enable Wilkins to pursue his a speedy trial right. The bottom line is that counsel's request to reset the trial for a date outside the seventy-day window was appropriate under the circumstances, and certainly did not constitute ineffective assistance of counsel.

Wilkins claims he was denied effective assistance of counsel because counsel sought a jury trial rather than a bench trial. In order to prevail on this claim, as others, Wilkins must show prejudice. *See Bethea v. State*, 983 N.E.2d 1134. Based upon the strength of the evidence of guilt, which included positive identification by the victim, Wilkins's fingerprints at the scene, and a surveillance video that captured the incident, Wilkins cannot show that a bench trial would have yielded a different result. Wilkinson did not receive ineffective assistance of counsel in this respect.

Wilkins claims he was denied effective assistance of counsel when trial counsel purportedly misadvised him that he faced a maximum of fifty years if he were convicted of all charges against him. In fact, according to Wilkins, he "was only facing a sentence of thirty Years [sic] if he proceeded to trial and lost [.]" *Brief of Appellant* at 19. Wilkins continues that as a result of this misadvisement, he "never had an accurate prediction of the respective consequences of pleading guilty or going to trial." *Id.* In point of fact, however,

6

fifty years *was* the maximum penalty he faced for the charges against him. *See* Ind. Code Ann. § 35-50-2-5 (West, Westlaw current with all 2013 legislation) (defining penalty for class B felony) and I.C. § 35-50-1-2 (West, Westlaw current with all 2013 legislation) (governing the imposition of consecutive sentences). The fact that Wilkins ultimately was sentenced to thirty years, and not the maximum, does not render counsel's advice inaccurate. Counsel was correct as to the maximum penalty Wilkins was facing. Therefore, counsel did not render ineffective assistance in this respect.

Wilkins next claims appellate counsel rendered ineffective assistance in failing to "produce sufficient material facts to support Wilkins [sic] motion to dismiss and discharge[.]" *Id.* at 21. According to Wilkins, appellate counsel's shortcomings caused his Crim. R. 4(B) claim to fail. We review claims of ineffective assistance of appellate counsel using the same standard as when reviewing claims of trial counsel ineffectiveness. Petitioner must show deficient performance and resulting prejudice. *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013).

Claims of ineffective assistance of appellate counsel "'generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well.'" *Id*. at 724 (quoting *Reed v. State,* 856 N.E.2d 1189, 1195 (Ind. 2006)). This claim falls into the third category. Claims of ineffective assistance of counsel in this category "are the most difficult … because such claims essentially require the reviewing court to reexamine … specific issues it has already adjudicated to determine 'whether the new record citations, case references, or arguments would have had any marginal effect on

7

their previous decision.'" *Henley v. State*, 881 N.E.2d 639, 653 (Ind. 2008) (quoting *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)).

The "new record" that Wilkins offers on this is described in his appellate brief as follows:

> Appellate Counsel failed to Rely upon the information contained within the Pre-Trial record, as there was sufficient evidence of material facts to support Pre-Trial counsel Churchward, and Prosecuting Attorney Adam Mildred's, disregard to Wilkins right to fundamental fairness, and a Meaningful trial date which requires Particularized Priority Treatment pursuant to Ind. Crim. Rule 4 (b), these facts were detrimental to Wilkins Success on his Motion to Dismiss and Discharge, Wilkins now points to the facts and case law showing that counsels representation fell below an objective standard of reasonableness and that counsel's made errors so serious that counsel was not function as a 'counsel' guaranteed to Wilkins by the sixth amendment *Strickland*,466 U.S @687-88.

*Brief of Appellant* at 22 (transcribed exactly as written). We have examined this section of Wilkins's argument and the only "facts" discussed therein pertain to the fact that the attorneys who represented Wilkins in different phases of the action below and on appeal were members of the same law firm. It is not clear to us how this would change the analysis set forth on direct appeal regarding Wilkins's motion to dismiss. Therefore, Wilkins's claim of ineffective assistance of counsel in this regard is without merit.

Wilkins contends he was denied effective assistance of counsel when trial counsel failed to object to an in-court identification of Wilkins by two of the State's witnesses, Connie Spisak and Michelle Crago. Spisak and Crago were two of the three restaurant employees whom Wilkins robbed at gunpoint. At trial, both positively identified Wilkins as the person who had robbed them. Citing *Cossel v. Miller*, 229 F.3d 649 (7th Cir. 2000),

Wilkins claims the in-court identification was improper because it did not satisfy the five-element test for admissibility, as set out in *Cossel*. Therefore, he claims, trial counsel's failure to object constituted ineffective assistance of counsel. *Cossel* does not apply here because it involved in-court identifications in the context of photo arrays and one-photograph show-ups. This case involves neither. Therefore, *Cossel* does not apply.

To demonstrate ineffective assistance of counsel based upon a failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure to interpose an objection. *Wrinkles v. State*, 749 N.E.2d 1179 (Ind. 2001), *cert. denied* (2002). Apart from the meritless argument discussed above, Wilkins offers no rationale under which a challenge to the in-court identifications would have been sustained. Thus, Wilkins cannot prove either substandard performance or prejudice.

Wilkins contends trial counsel rendered ineffective assistance in failing to object to the fingerprint evidence testimony offered by fingerprint examiner Eric Black and crime scene laboratory supervisor David Young, both of whom were members of the Fort Wayne Police Department. We reiterate that in order to prevail on this claim, Wilkins must prove that an objection would have been sustained. *Id.* Even accepting the dubious proposition that an objection to introduction of the fingerprint evidence would have been sustained, Wilkins cannot prevail.

A trial court's erroneous admission of evidence is not, by itself, sufficient to warrant reversal. A defendant must also show that the erroneous admission of evidence affected a substantial right because the record viewed as a whole reveals that the erroneously admitted

9

evidence likely had a prejudicial impact on the mind of the average juror and thus contributed to the verdict. *Granger v. State*, 946 N.E.2d 1209 (Ind. Ct. App. 2009). The fingerprint evidence was used to identify Wilkins as the person who perpetrated the crimes. As set out previously, however, two eyewitnesses to the robbery also unequivocally identified Wilkins as the perpetrator. That eyewitness testimony is significantly more compelling than the fingerprints, as is the security-camera recording of the incident. Accordingly, the record does not establish that the fingerprint evidence likely contributed to the verdict. This claim of ineffective assistance of counsel fails.

During jury voir dire, the State used a peremptory challenge to exclude a venireperson who was African-American (Juror 62). Wilkins contends trial counsel's failure to object to the exclusion – to raise a so-called *Batson* challenge – constituted ineffective assistance of counsel. We reiterate that in order to succeed in this argument in the context of a claim of ineffective assistance of counsel, Wilkins must establish that he was prejudiced by trial counsel's failure to make a *Batson* challenge. This means that he must establish that such a challenge would have been successful. *See French v. State*, 778 N.E.2d 816, 826 (Ind. 2002).

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Addison v. State*, 962 N.E.2d 1202, 1208-10 (Ind. 2012) (quoting *Batson v. Kentucky,* 476 U.S. 79, 86 (1986)). A *Batson* claim involves a three-step process. First, the defendant must establish circumstances that raise an inference that discrimination occurred.

*Addison v. State*, 962 N.E.2d 1202. This is commonly referred to as the prima facie showing. Wilkins contends this burden would have been met because the State struck the only African-American venireperson. If true, this would establish a prima facie showing of discrimination. *See id*. Our review of the record, however, leaves us uncertain as to whether Juror 62 was indeed the only African-American in the venire.[1] If so, his removal does raise an inference that he was excluded on the basis of race. *See id.* If not, the removal of some, but not all, African-Americans from the venire via peremptory challenges does not, by itself, raise an inference of racial discrimination. *See id.* Regardless, even assuming that Juror 62 was the only African-American on the venire, Wilkins cannot prove his case.

If Juror 62 was the only African-American in the venire, the burden would have shifted to the State to offer a race-neutral reason as the basis for striking him. *Id*. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id*. at 1209 (quoting *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam)). The following exchange occurred during voir dire:

> **PROSECUTOR**: All right. These three (3) questions that I asked, if you would agree to ask yourself: Do I have a doubt? Does it go to the elements? And is my doubt reasonable? Would you ask yourself those three (3) questions? And if your answer is "no", then— to any of those, I've done my job. Right? Is that fair?
>
> **JUROR 63**: (Responds by nodding in the affirmative.)
>
> **JUROR 62**: (Responds by nodding in the affirmative.)

---

[1] During voir dire, the court discussed with counsel the exclusion of Juror 62. During that colloquy, the prosecuting attorney stated, "Judge, although *Batson* wouldn't require a race-neutral reason 'cause it's my first strike of – of an African-American juror …." *Transcript* at 118-19. This suggests that there was more than one African-American in the venire.

**Q:** And then, in fact, that your — would you return a verdict of guilty in that circumstance?

**JUROR 62**: I really couldn't say.

**Q:** Pardon me?

**JUROR 62**: I couldn't say. I said I — I really couldn't say.

**Q:** Okay. Well — well, if you don't have a doubt that goes to one of the elements then you wouldn't return a verdict of guilty?

**JUROR 62**: I don't know.

**Q:** Okay. Well— well, then I guess I just want to make sure that I'm under—that I'm able to hear you okay. Is it— why would that be, sir?

**JUROR 62**: I don't know, 'cause I've never been on a jury trial before.

*Transcript* at 111-112. In the discussion that followed, the prosecutor noted that Juror 62 had filled out a questionnaire asking if there was anyone close to him that had been charged or convicted of a crime. He answered "yes". Assuming that question was answered in the affirmative, the questionnaire sought additional information. The prosecutor noted that Juror 62 had failed to provide on the questionnaire any of the details pertaining to his affirmative response. The prosecutor asked Juror 62 why he did not answer that portion of the questionnaire. Juror 62 responded that he did not remember the dates and details, but he did share that the subject of the previous arrest was his son. Upon further questioning, Juror 62 shared that his son had been convicted of burglary many years before.

When he exercised his peremptory strike of Juror 62, the prosecutor explained his reasoning as follows:

12

Oh. Well then, that being the case, ma'am, I've provided a race-neutral reason. I—he—he was--when I was asking the questions, I asked him to (2) or three (3) times and he said, "I don't know, I've never been a juror before." And— and while he may have corrected it, which would support not taking him for cause, I think it's a—it's a sufficient race neutral reason for—to take it as a peremptory.

*Id*. at 119. Essentially, the State sought to exclude Juror 62 because he indicated that he may not vote to convict even if he was convinced the State had established all elements necessary to achieve a conviction. The State's subsequent questioning established a possible basis for Juror 62's reluctance, i.e., Juror 62's son had been convicted of a crime. This was a sufficiently race-neutral reason to withstand a *Batson* challenge. Thus, even if an objection had been made, the trial court would not have sustained it. Therefore, Wilkins has failed to demonstrate that he was prejudiced by trial counsel's failure to raise a *Batson* challenge with respect to the exclusion of Juror 62.

Wilkins contends trial counsel rendered ineffective assistance when he "waived opening statement, cross-examination, closing statement, and allowed a double jeopardy violation in Count 3, 'abandonment'". *Brief of Appellant* at 39. Wilkins has failed to articulate what trial counsel would or could have said during opening and closing statements that would have had any meaningful impact on the outcome of this case. Having failed to establish prejudice, his argument with respect to those claims is without merit.

Wilkins was convicted of robbery and unlawfully possessing a firearm as a serious violent felon. He contends that because the robbery conviction was elevated on the basis that he used a firearm, a separate conviction of possessing a firearm by a serious violent felon violates double jeopardy. Our Supreme Court has indicated otherwise. In *Guyton v. State*,

13

771 N.E.2d 1141, 1143 (Ind. 2002), our Supreme Court stated, "carrying the gun along the street was one crime and using it was another." (Quoting *Mickens v. State*, 742 N.E.2d 927, 931 (Ind. 2001)). Therefore, had defense counsel challenged the firearm conviction on grounds of double jeopardy that challenge would have failed. This cannot provide the basis of a successful claim of ineffective assistance of counsel. *See Wrinkles v. State*, 749 N.E.2d 1179.

Wilkins contends he was denied effective assistance of counsel when counsel did not argue that criminal confinement is a lesser included offense of robbery. The rationale offered in support of this argument is less than clear. Wilkins invokes *Wethington v. State*, 560 N.E.2d 496 (Ind. 1990) and *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999) in a confusing explication of his position relative to this claim. So far as we can tell, his claim is that the factual basis underlying the confinement charge was the same conduct alleged by the State to establish the "by force" element required to support the robbery charge. Put another way, Wilkins contends the confinement was the force by which he effectuated the robbery, and therefore he cannot be convicted of both offenses.

Robbery consists of taking property "by using or threatening the use of force" or "by putting any person in fear." *See* Ind. Code Ann. § 35-42-5-1 (West, Westlaw current with all 2013 legislation). Criminal confinement consists of confining a person or removing them by fraud, enticement, force, or threat of force from one place to another. *See* I.C. § 35-42-3-3 (West, Westlaw current with all 2013 legislation). Our Supreme Court has indicated that confinement is not a lesser-included offense of robbery. *See Hopkins v. State*, 759 N.E.2d

14

633 (Ind. 2001). Moreover, confinement is a separate criminal act where the confinement is greater than that which is inherently necessary to rob the victim, even where the confinement is a part of the robbery. *See id.* Wilkins confined the three victims well beyond that which was necessary to carry out the robbery. He forced his victims to the restaurant's bathroom. It was not necessary to do this in order to take the restaurant's money. A double jeopardy challenge would not have succeeded, and therefore cannot be the basis of a finding of ineffective assistance of counsel. *See Wrinkles v. State*, 749 N.E.2d 1179.

Finally, under the broad claim that his convictions violated the Fifth, Sixth, and Fourteenth Amendments, Wilkins claims, "The Charging Information for Counts 1, 2 & 3 failed to meet the requirements of Ind. Code 35-34-1-2.4 (A)." *Brief of Appellant* at 50. He explains that the charging information was defective in that it failed to comply with Ind. Code Ann. § 35-34-1-2.4 (West, Westlaw current with all 2013 legislation), which provides that a charging information must be "verified or sworn under oath". Further, the statute provides a model affirmation clause meeting that requirement, i.e.: "I swear (affirm), under penalty of perjury as specified by IC 35-44.1-2-1, that the foregoing (the following) representations are true." We note, however, that the statute explicitly does not narrow the list of acceptable forms to only the model affirmation set out therein. Rather, it provides that "a substantially similar form" would be acceptable as well. *Id.*

In the present case, the charging informations, in pertinent part, read as follows: "Undersigned, upon information and belief, being duly sworn upon oath, says that: On or about the thirty-first day of May, 2007, in the County of Allen and in the State of Indiana,

15

said defendant, Daniel E. Wilkins …" – at this point, the charging informations set out the allegations specific to the respective offenses with which he was charged. By including in the statute a provision indicating that language substantially similar to the model form would suffice, the Legislature signaled its intention not to create "magic words." Although it would perhaps be preferable to use the model language, the failure to do so is not fatal error. The charging informations in the present case indicate that the person signing the informations did so while "duly sworn upon oath" and that it was "[s]ubscribed and sworn to before me". *Appellant's Appendix* at 363 and 364, respectively. "The essential purpose of a verification is that the statements be made under penalty of perjury." *Austin v. Sanders*, 492 N.E.2d 8, 9 (Ind. 1986). I.C. § 35-34-1-2.4 prescribes a method of verification without the presence of a notary or other officer authorized to administer an oath. The rule allows verification by reciting the statutory language, or substantially similar language.

To "swear" is "to take an oath." *Black's Law Dictionary* 1461 (7th ed. 1999). "The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false." *Id.* at 1099. In Indiana, a person commits the crime of perjury when he or she "makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true[.]" Ind. Code Ann. § 35-44.1-2-1(a)(1) (West, Westlaw current with all 2013 legislation). In the present case, the deputy prosecutor affirmed the representations contained in the charging informations were true, and did so swearing an oath to that effect. As such, the deputy prosecutor who signed the charging informations subjected himself or herself to the penalties of perjury if the sworn statement was false. Thus, although not in the

16

form set out in I.C. § 35-34-1-2.4, the affirmation language incorporated in these charging informations was sufficient to satisfy the purpose of the requirement set out in the statute. In light of this, a legal challenge by trial or appellate counsel on the grounds that Wilkins identifies here would not have succeeded. We reiterate that counsel cannot be deemed to have rendered ineffective assistance of counsel for failure to present a meritless claim. *See Wrinkles v. State*, 749 N.E.2d 1179.

2.

Wilkins contends the trial court erred in failing to conduct an evidentiary hearing prior to rendering a decision on his PCR petition. Our Supreme Court has determined that no evidentiary hearing is required when the petition for post-conviction relief "conclusively demonstrates that the petitioner is entitled to no relief[.]" *Truitt v. State*, 853 N.E.2d 504, 507 (Ind. Ct. App. 2006). Although Wilkins raised a plethora of issues, all of them are legal issues, and could be resolved merely by consulting the record, without the need for a fact-finding hearing. Therefore, the post-conviction court did not err in ruling upon Wilkins's PCR petition without conducting an evidentiary hearing.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.

17