## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2015, 8:12 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark E. Kamish
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Amanda Biggs,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 13, 2015

Court of Appeals Cause No.
53A05-1406-CR-295

Appeal from the Monroe Circuit Court
Cause No. 53C02-1305-FA-504 and 53C02-1306-FC-508

The Honorable Marc R. Kellams, Judge

**Barnes, Judge.**

# Case Summary

[1] Amanda Biggs appeals her six-year sentence for one count of Class C felony robbery and one count of Class C felony forgery. We affirm.

# Issue

[2] The sole issue before us is whether Biggs's sentence is inappropriate.

# Facts

[3] On or about February 22, 2013, Biggs filled in the amount of $2,500 on a check stolen from Guy Roberts. Biggs's friend, Alisha White-Sipes, signed Roberts's name on the bottom of the check and attempted to cash it, unsuccessfully. Biggs's roommate at the time, Lindsey Huffman, also attempted to cash a second check stolen from Roberts and also was unsuccessful in doing so. It is unclear how the three women came into possession of Roberts's checks.

[4] On May 13, 2013, Biggs went to a hotel in Bloomington with the intent to engage in prostitution. Biggs was accompanied by a friend, Bennie Ferguson, for safety reasons. On the way to the hotel, Ferguson told Biggs that it would be easy to "hit a lick," which Biggs understood to mean commit a robbery. Tr. p. 49. When Biggs arrived at the victim's hotel room and the victim opened the door, both Biggs and Ferguson entered the room. Ferguson immediately put the victim in a headlock until he lost consciousness. Biggs then stole $300 in cash from the victim, while Ferguson stole two cell phones.

For these incidents the State charged Biggs with one count of Class A felony robbery, one count of Class C felony forgery, and one count of Class D felony theft. Ferguson was charged with Class A felony robbery, pled guilty to Class C felony robbery, and received a sentence of five years executed. White-Sipes was charged with Class D felony theft; the State entered into a deferred prosecution agreement with her, which eventually led to the charge being dismissed. Huffman was charged with Class C felony forgery and Class D felony theft; she pled guilty to Class D felony theft only and received a sentence of 365 days with 361 days suspended.

Biggs and the State eventually entered into a plea agreement calling for her to plead guilty to Class C felony robbery and Class C felony forgery, with the sentences to be served concurrently. The plea agreement also provided for dismissal of other charges Biggs was facing for Class C misdemeanor driving without ever having received a license and Class D felony domestic battery. Biggs also agreed to pay restitution to the robbery victim, jointly and severally with Ferguson. After conducting a sentencing hearing, the trial court imposed a sentence of six years, with four years executed and two years suspended to probation, for each conviction, to be served concurrently as required by the plea agreement. Biggs now appeals.

## Analysis

Biggs contends that her sentence is inappropriate under Indiana Appellate Rule 7(B) in light of her character and the nature of the offenses. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing

decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[8] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We also note that, although we need not compare the sentences of codefendants, we are not precluded from comparing sentences among those convicted of the same or similar crimes. *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010).

[9]　We first look at the nature of the offenses. Regarding the robbery, it resulted from Biggs's intention to engage in prostitution with the victim. Even if, as Biggs claims, it was not her original intention to rob the victim, she still intended to engage in illegal activity with him. The victim lost consciousness; although there is no evidence he sustained any lasting injury, loss of consciousness by itself would have been sufficient to make the robbery a Class A felony, not just a Class C felony. *See* Ind. Code §§ 35-42-5-1 & 35-31.5-2-292 (2013) (classifying robbery as a Class A felony if it results in "serious bodily injury" and including "unconsciousness" within definition of "serious bodily injury"). Unless a plea agreement requires a trial court to do so, and the plea agreement here did not, "it is not necessary for a trial court to turn a blind eye to the facts of the incident that brought the defendant before them" in the event the defendant agrees to plead guilty to a lesser charge. *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013).

[10]　As for the forgery, it is unclear how Biggs or her cohorts came into possession of the stolen checks. Biggs's sole act in the crime was to write in a dollar amount on one of the checks. It was White-Sipes and Huffman who actually forged signatures on the checks and attempted to cash them. Those attempts were unsuccessful and so resulted in no pecuniary harm to Roberts.

[11]　We now address Biggs's character. She was twenty-one to twenty-two years old when she committed these offenses and had no prior criminal or juvenile history. Biggs also pled guilty, but she received a significant benefit from the

plea in the reduction of the robbery charge from a Class A to a Class C felony and the dismissal of other pending charges.

[12] After carefully considering Biggs's character, the nature of the offenses, and the sentences received by her cohorts, we cannot say that her sentence is inappropriate. It is true that Biggs's sentence for Class C felony forgery is much greater than the punishments received by White-Sipes and Huffman, with no evidence that Biggs's character or conduct in relation to that offense was any worse than her cohorts. However, we reiterate that, in the end, we are analyzing Biggs's aggregate sentence, not individual sentences. Because the forgery sentence is concurrent with the robbery sentence, it does not carry its own separate punitive weight. Unlike White-Sipes and Huffman, Biggs did commit that robbery within a relatively short time after committing the forgery.

[13] As for the robbery, it was more egregious than a so-called "typical" Class C felony robbery because, as noted, the victim's loss of consciousness could have supported a Class A felony conviction. Ferguson received a five-year executed sentence for his part in the crime. Although Biggs's total sentence is one year longer than Ferguson's, her executed time is one year less, which we take into account. Also, although Biggs asserts that Ferguson has a prior criminal history, while she does not, the record does not reveal what is contained in Ferguson's record; we do not know the seriousness of that record. Biggs further was being sentenced simultaneously for two Class C felony convictions, while Ferguson was only sentenced for one such conviction. Based upon the record

before us, we do not believe that Biggs's sentence is disproportionate as compared to Ferguson's.

## Conclusion

[14] We conclude that Biggs's sentence is not inappropriate, and we affirm.

[15] Affirmed.

May, J., and Pyle, J., concur.