**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Jan 31 2014, 10:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JUSTIN R. WALL**
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHALE GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATHAN ALLEN KLINE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1307-CR-573 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey R. Heffelfinger, Judge
Cause No. 35D01-1212-FB-276

**January 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

Nathan Allen Kline appeals his convictions for dealing in methamphetamine as a Class B felony and operating an illegal drug lab as a Class D felony.[1]  Kline raises four issues on appeal:  1) whether he was denied the effective assistance of his trial counsel; 2) whether his convictions violate double jeopardy; 3) whether there is sufficient evidence to sustain his convictions; and 4) whether his sentence was inappropriate in light of his character and the nature of his offense.  Concluding that he was not denied the effective assistance of his trial counsel, that there is sufficient evidence, and that his sentence is not inappropriate, but that his convictions do violate double jeopardy, we reverse in part and affirm in part.

## Facts and Procedural History

In December 2012 police responded to a call regarding smoke and a chemical smell coming from a residence.  Responding Detective Shane Jones noticed smoke coming from a window as well as a chemical smell that he associated with the manufacture of methamphetamine.  Detective Jones and Sergeant Donald Wall were allowed into the home by the homeowner, James Leon Cox.  Inside the home, police noted several items associated with methamphetamine manufacturing and also found a receipt from a local store for the purchase of batteries.  Police reviewed the surveillance tape at the store for the relevant time period and saw Kline and Cox enter the store and purchase items known to be used in the manufacture of methamphetamine.

---

[1] Count II is referred to as "illegal drug lab" but the statute under which Kline was charged is actually titled "Possession of chemical reagents or precursors with intent to manufacture controlled substances."  Ind. Code § 35-48-4-14.5

Police were tipped off by Tracie Willis, who, along with her boyfriend Shane Hogan, was working with Cox and Kline to make methamphetamine. Hogan testified that he and Willis agreed to provide some over-the-counter medicine needed for the manufacture of methamphetamine in exchange for some of the finished product.

At some point while questioning Cox, police learned that Kline was supposed to be bringing methamphetamine over to Cox that day. Police had Cox call Kline, and police listened to the call. Detective Jones testified that Cox asked Kline about the drugs, and Kline said that he had spilled what he was cooking and they would have to start over.

The State charged Kline with count I, dealing in methamphetamine as a Class B felony; and count II, operating an illegal drug lab as a Class D felony. Kline was found guilty of both counts following a jury trial. At sentencing, the State noted that it had not distinguished the facts between count I and count II, and that it therefore believed a sentence should not be entered for count II. The court agreed that it was "iffy" and the counts were probably merged, and so while it would sentence on count II, it would run the sentences concurrently. Transcript at 658. The court sentenced Kline to twenty years on count I and one-and-one-half years on count II, to run concurrently. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Ineffective Assistance of Counsel

A. Standard of Review

We review claims of ineffective assistance of counsel under the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Bieghler v. State, 690 N.E.2d 188, 192 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). To prevail on a claim of

ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and that the lack of reasonable representation prejudiced him. Randolph v. State, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), trans. denied. To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To show prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Pruitt v. State, 903 N.E.2d 899, 906 (Ind. 2009).

Under this standard, judicial scrutiny of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Bieghler, 690 N.E.2d at 193 (citing Strickland, 466 U.S. at 689). Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference. Randolph, 802 N.E.2d at 1013. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. Id.

Finally, we note that the two prongs of the Strickland test are separate and independent inquiries. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we may determine the prejudice prong first without inquiring into whether counsel's performance was adequate. Thacker v. State, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), trans. denied.

4

## B.  Kline's Trial Counsel

Kline argues that he was denied the effective assistance of his trial counsel because he asked his trial counsel to file a motion for a speedy trial and counsel never did so.  Kline was originally appointed Jeremy Nix as his attorney.  A few months later, Kline wrote to the judge on the case and asked that he be appointed a different lawyer and also noted that Nix had not filed a motion for a speedy trial as Kline had wanted. Ultimately, Kline was appointed a different attorney from the same firm, Jill Denman. At the beginning of trial, Denman told the court that Kline wished to have a different attorney because Denman and Nix were from the same firm, and Kline noted that he wanted a speedy trial and that Nix had not filed the motion.  In the end, Kline kept Denman as his attorney and the case proceeded to trial that day.

There is nothing in the record indicating why Nix did not file a motion for a speedy trial.  Kline argues that because no reason was given and there is evidence that Kline wanted the motion filed, the failure to file the motion constitutes deficient performance.  Kline cites to Broome v. State, 694 N.E.2d 280, 281 (Ind. 1998), in which trial counsel did not file a motion for a speedy trial as the defendant wanted, and counsel explained that he could not properly prepare for trial in the timeframe that would have been set by such a motion.  The reviewing court determined that the decision not to file the motion was related to trial preparation and strategy and that the defendant had not presented strong evidence to overcome the presumption that counsel rendered adequate assistance.  Kline argues that because no such preparation or strategy reason was given here, Nix was deficient in failing to file the motion.  We disagree.  Kline presents no real evidence to overcome the presumption that counsel's conduct falls within the wide range

of reasonable professional assistance, nor has Kline shown that it was not a preparation or strategy decision on Nix's part. While the Broome court noted that "[t]here may exist circumstances in which defense counsel's refusal or neglect to file a speedy trial motion specifically requested by a defendant could constitute deficient performance to support a claim of ineffective assistance of counsel," Kline has not presented us with evidence showing that his counsel's performance was deficient. Id.

Kline also argues that there is a reasonable probability that the result of the proceedings would have been different had a motion for a speedy trial been filed, because Cox did not mention the involvement of Willis and Hogan in the scheme until after Cox received a plea agreement and police did not interview them until shortly before Kline's trial. From talking to Willis and Hogan, the police obtained additional witnesses and evidence against Kline. Kline only speculates that the State would not have been able to get that additional evidence in a more timely fashion had he filed for a speedy trial. It seems just as likely that if Kline's trial had been expedited the State could have more quickly offered a plea to Cox, and would still have been able to obtain the same evidence for an advanced trial date. Additionally, the State already had witnesses and evidence against Kline before Willis and Hogan were interviewed, and so we cannot agree that there is a reasonable probability that, but for any failure to file a request for a speedy trial, the result of the proceeding would have been any different.

Kline has not shown that his counsel's performance was deficient or that any deficiency prejudiced him. We conclude that Kline was not denied the effective assistance of his trial counsel.

## II. Double Jeopardy

### A. Standard of Review

Our supreme court has concluded that two offenses are the same offense for double jeopardy purposes if, "with respect to <u>either</u> the statutory elements of the challenged crimes <u>or</u> the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." <u>Richardson v. State</u>, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original). Under the actual evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." <u>Id.</u> at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." <u>Id.</u> A "reasonable possibility" requires substantially more than a logical possibility, and "turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." <u>Garrett v. State</u>, 992 N.E.2d 710, 719-20 (Ind. 2013) (quoting <u>Lee v. State</u>, 892 N.E.2d 1231, 1236 (Ind. 2008)). "We evaluate the evidence from the [fact finder's] perspective and may consider the charging information, jury instructions, and arguments of counsel." <u>Id.</u> at 720.

### B. Kline's Convictions

Kline next argues that his convictions for both dealing in methamphetamine and operating an illegal drug lab violate double jeopardy. The record shows that the State noted at sentencing that it had not sufficiently distinguished between the facts supporting

the two counts, and the State now agrees that Kline's conviction on count II should be vacated. We also agree, and accordingly we vacate Kline's conviction and sentence on count II, operating an illegal drug lab as a Class D felony.

### III. Sufficiency of the Evidence

#### A. Standard of Review

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. West v. State, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. Id.

#### B. Dealing in Methamphetamine

Kline argues that there is insufficient evidence to support his conviction for dealing methamphetamine.[2] Kline contends that because Cox was a key witness for the State and the only person to testify that Kline was manufacturing methamphetamine with him at his residence, and because there were some conflicts between what Cox initially told the police and what he testified to at trial, Cox's testimony is unbelievable and the incredible dubiosity rule comes into play. We disagree.

The incredible dubiosity rule is expressed as follows:

[i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly

---

[2] Kline also addresses the evidence supporting his conviction for operating an illegal drug lab. However, because we vacate his conviction on that count on double jeopardy grounds, the issue of sufficiency is moot.

uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007) (quoting Love v. State, 761 N.E.2d 806, 810 (Ind. 2002)). We disagree that Cox's testimony was inherently improbable, or that there was no additional circumstantial evidence of Kline's guilt. Even if there had been no other witnesses against Kline, the uncorroborated testimony of one witness is sufficient to sustain a conviction on appeal. Gregory v. State, 885 N.E.2d 697, 704 (Ind. Ct. App. 2008), trans. denied. In addition to Cox's testimony, there was other circumstantial evidence against Kline, including Detective Jones's testimony regarding the store video footage he saw and the phone conversation he overheard, and Hogan's testimony as to the plan to manufacture methamphetamine. As for Cox's testimony itself, "discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony 'incredibly dubious.'" Id. at 705. Determination of the weight to give to evidence and the credibility of witnesses is a matter for the jury, and we do not reweigh evidence on appeal. We conclude that the incredible dubiosity rule does not apply here. There was sufficient evidence from which the jury could have concluded that Kline was guilty beyond a reasonable doubt of dealing methamphetamine.

IV. Appropriateness of Sentence

A. Standard of Review

We are empowered by Indiana Appellate Rule 7(B) to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence has met this inappropriateness standard of review. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). When conducting this inquiry, we may look to any factors appearing in the record. Roney v. State, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), trans. denied, abrogated on other grounds by Bethea v. State, 983 N.E.2d 1134, 1144 (Ind. 2013). In reviewing a sentence under Appellate Rule 7(B), the question "is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of both the nature of his offenses and his character. Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). The advisory sentence is our starting point in reviewing the nature of the offense, and the aggravating and mitigating factors, along with general considerations, are involved in our review of the character of the offender. Clara v. State, 899 N.E.2d 733, 736 (Ind. Ct. App. 2009).

### B. Kline's Sentence

Finally, Kline argues that his sentence is inappropriate. However, Kline does not argue that his sentence is inappropriate because of his character and the nature of his offense; rather, Kline argues that his sentence is inappropriate because of planned legislative changes to the Indiana sentencing scheme under which Kline calculates that he would receive a shorter sentence for dealing in methamphetamine. However, legislative changes that are not even in effect yet are not the guidepost for determining whether a sentence is inappropriate. As for the considerations that do come into play, we do not

find Kline's sentence to be inappropriate in light of his character and the nature of his offense. Kline admits that "the severity of his crimes and his past criminal history . . . don't directly support a reduction in his sentence." Appellant's Brief at 34. Kline concedes that the manufacturing of methamphetamine is a dangerous operation and a growing epidemic in our community. And, Kline has an extensive criminal history involving prior misdemeanors, felonies, and petitions to revoke probation. We conclude that Kline's sentence is not inappropriate in light of his character and the nature of his offense.

## Conclusion

Concluding that Kline was not denied the effective assistance of his trial counsel, there is sufficient evidence to support his conviction for dealing in methamphetamine, and his sentence is not inappropriate, but that his two convictions together violate double jeopardy principles, we vacate his conviction and sentence on count II, and otherwise affirm.

Affirmed in part and reversed in part.

BARNES, J., and BROWN, J., concur.