## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Taylor Baughn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2015

Court of Appeals Case No. 33A01-1408-CR-368

Appeal from the Henry Circuit Court

The Honorable Kit C. Dean Crane, Judge

Cause No. 33C02-1303-MR-1

**Brown, Judge.**

Taylor Baughn appeals his sentence for aggravated battery, a class B felony. Baughn raises one issue which we revise and restate as:

I.  Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

In February 2013, Baughn was incarcerated at the New Castle Correctional Facility in Henry County. On February 14, 2013, Baughn planned to attack another inmate, Jeremiah Taylor. When he encountered Jeremiah, Baughn walked up beside him and hit him once, causing Jeremiah to fall to the ground. Baughn then hit Jeremiah "at least two (2) more times, maybe three (3) more times while he was on the ground." Transcript at 22. Jeremiah suffered skull fractures from the attack which ultimately resulted in his death.

On March 20, 2013, the State charged Baughn with murder. On June 13, 2014, Baughn and the State entered into a plea agreement whereby Baughn agreed to plead guilty to an amended charge of aggravated battery, a class B felony, and the State agreed "to 'cap' its argument at fifteen (15) years" at sentencing and that the court would be free to impose any sentence within the range of possibilities up to the agreed cap. Appellant's Appendix at 67. The State also agreed to dismiss the murder charge.

[4]     On July 31, 2014, the State filed a motion to amend information to add Count II, aggravated battery, and the court granted the State's motion. That same day, the court held a hearing at which Baughn pled guilty pursuant to the plea agreement. Following Baughn's guilty plea, Jeremiah's father, Kent Taylor, gave a victim's statement to the court in which he stated that he and the rest of Jeremiah's family "don't understand why Mr. Baughn is no longer being charged with Murder" and "are frustrated that he is now facing a lesser sentence for killing our son." Transcript at 27. Afterward, the prosecutor told the court that he had spoken with Jeremiah's family and "explained my reasons for . . . offering this plea agreement," and he believed "that the evidence as it exists, as I know it . . . I believe that Aggravated Battery to be the appropriate and fair resolution in this case and I would ask the Court to accept it." *Id.* at 29. The prosecutor stated that he also discussed with the Taylors "Involuntary Manslaughter . . . which I believe to be an inherent and lesser included if not factually lesser included offense," that he "explained the different penalties of those as well and then explained the elements of Aggravated Battery and how that would work and the penalties in that situation as well" and that "[a]ll of those went into [his] mind in offering this plea agreement." *Id.* at 30.

[5]     Baughn apologized to Jeremiah's "parents and loved ones" and stated that "I need you to know and understand that your son was not supposed to die." *Id.* at 33. He stated that he understood if they did not forgive him and that he wanted them "to know that [he was] sorry and that" he was "suffering from the guilt and the fact that [he] took someone's life and it kills [him] every second of

the day." *Id.* He stated that he had "nightmares about that night," had seen Jeremiah in his dreams, and had "stayed awake countless nights praying and talking to Jeremiah as if [they] were friends." *Id.*

The State asked the court to sentence Baughn to fifteen years executed in the Department of Correction ("DOC"). The court accepted Baughn's guilty plea and dismissed Count I, murder. The court identified in aggravation Baughn's history of criminal and delinquent activity and the harm, injury, loss or damage, which was significant and greater than the element to the offense of aggravated battery. The court noted in mitigation that it appreciated "when a defendant accepts responsibility," but that he had "the benefit of a plea agreement and the benefit of a capped sentence." *Id.* at 38. The court also noted that although Baughn pled guilty, his plea "was pursuant to a plea agreement. . . . on an amended charge and it did come with a cap for the Court, so I don't find that as a mitigating circumstance." *Id.* at 39. The court found that the aggravators outweighed "any other factors" and sentenced Baughn to fifteen years, including thirteen years executed in the DOC and two years suspended to probation. *Id.* The court also ordered restitution in the amount of $1,995 to pay Jeremiah's family for funeral expenses.

## Discussion

### I.

The first issue is whether the trial court abused its discretion in sentencing Baughn. We review the sentence for an abuse of discretion. *Anglemyer v. State*,

868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[8] Baughn first argues that the court abused its discretion by improperly assessing the weight to be assigned to his criminal history. He specifically argues that the court abused its discretion by assigning "substantial weight to his criminal history or delinquent behavior" where he "had one juvenile adjudication and one adult conviction for child molest for which he received a four (4) year sentence." Appellant's Brief at 9. This argument is, in essence, a request for this court to reweigh the aggravator, which we may not do. *See Anglemyer*, 868

N.E.2d at 491 (holding that the relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse of discretion).

[9] Baughn also argues that the court abused its discretion when it identified the harm, injury, loss, or damage which was greater than the elements of the offense as an aggravator. He argues that although, under *Bethea v. State*, 983 N.E.2d 1134, 1142 (Ind. 2013), the "State owed [him] no further duty to omit facts relating to remaining charges from consideration as aggravating circumstances if they were not set forth in the plea agreement," it is "slightly questionable for the State to acknowledge on the record that the amended charge it agreed for [him] to plead to be fair and appropriate then complain that the harm, injury, loss or damage was significant and greater than the elements of the offense for which it just bargained." Appellant's Brief at 14. We disagree with the logic of Baughn's argument, for although the State may have indicated at the hearing that obtaining a murder conviction could have been difficult based on the evidence against Baughn, that does not change the fact that Baughn's actions caused the death of Jeremiah, which is a greater harm, injury, or loss than is required to prove the crime of aggravated battery.[1] We cannot say the court abused its discretion when it found as an aggravator that the harm, injury, loss or damage was significant and greater than the elements of

---

[1] At the time of the offense, Ind. Code § 35-42-2-1.5 provided in relevant part that "[a] person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death . . . commits aggravated battery, a Class B felony."

the offense of aggravated battery. *See Bethea*, 983 N.E.2d at 1145 (holding that the trial court did not err by giving significant weight to the facts presented to it relating to dismissed charges because the State's obligations under the plea agreement were fulfilled upon dismissal of the remaining counts and it owed the defendant no further duty to omit these facts from the aggravating circumstances consideration).

[10]  Baughn next argues that the court abused its discretion when it declined to find his guilty plea as a mitigator. He argues that "the State received a substantial benefit" because it "indicated the real possibility of a jury finding that a lesser included offense of Involuntary Manslaughter or Reckless Homicide was the appropriate charge." Appellant's Brief at 10.

[11]  The Indiana Supreme Court has held that "a defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." *Anglemyer Rehearing*, 875 N.E.2d at 220 (quoting *McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007)). However, "an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant." *Id.* at 220-221. The significance of a guilty plea as a mitigating factor varies from case to case. *Id.* at 221. We have previously explained that a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a

pragmatic one. *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied*.

[12] The trial court at sentencing considered Baughn's guilty plea in mitigation but declined to find it as a mitigator, noting specifically that he pled guilty "on an amended charge and it did come with a cap for the Court . . . ." Transcript at 39. We agree with the trial court's reasoning that Baughn received a substantial benefit from pleading guilty and that Baughn's decision to plead guilty was a pragmatic one. Instead of facing a sentence of forty-five to sixty-five years for murder, he faced a maximum sentence of fifteen years under the plea agreement and was ultimately sentenced to fifteen years with two years suspended. The State acknowledged at the hearing that it had some degree of doubt regarding the intent evidence against Baughn at a murder trial; however, there is no dispute regarding whether Baughn inflicted the injuries causing Jeremiah's death inside the New Castle Correctional Facility. Thus, although we cannot say with certainty that a jury would have convicted Baughn of murder, he was certainly faced with the possibility. We conclude that the court did not abuse its discretion in sentencing Baughn.

## II.

[13] The next issue is whether Baughn's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[14] Regarding the nature of the offense, Baughn argues that while he intended "to batter the victim and did so at least once and maybe three times, he did not intend to kill the victim, and thus while the result of the offense is tragic," had Jeremiah not died the issue "could have been a misdemeanor battery handled administratively within the IDOC." Appellant's Brief at 16. Regarding his character, Baughn argues that he "was twenty-two (22) years old, had one adult conviction, and one juvenile adjudication" and "was clearly remorseful and expressed remorse in a heartfelt statement." *Id.* He further argues that he "ultimately cooperated with law enforcement, agreed to pay restitution and plead guilty." *Id.* The State argues that Baughn "sucker-punched" Jeremiah, fracturing his skull "in three places and result[ing] in his death." Appellee's Brief at 8. The State notes that, despite Baughn's young age, he has both a juvenile adjudication and a conviction for child molesting, and further that he was in the DOC when he committed the instant offense.

[15] Our review of the nature of the offense reveals that Baughn planned to attack Jeremiah at the New Castle Correctional Facility, and, upon encountering him, walked up beside him and hit him once, causing Jeremiah to fall to the ground. Baughn then hit Jeremiah "at least two (2) more times, maybe three (3) more

times while he was on the ground." Transcript at 22. Jeremiah suffered skull fractures from the attack which ultimately resulted in his death.

[16] Our review of the character of the offender reveals that Baughn was twenty-two years old at the time of the offense. He was originally charged with murdering Jeremiah and ultimately pled guilty to aggravated battery as a class B felony. At sentencing, he expressed remorse to the family of the victim and the court, stating specifically that he wanted them "to know that [he was] sorry and that" he was "suffering from the guilt and the fact that [he] took someone's life and it kills [him] every second of the day." *Id.* at 33. Baughn's presentence investigation report ("PSI") reveals that in 2006, at the age of fifteen, he was arrested for conduct which would be child molesting as a class C felony if committed by an adult. In March 2007, he was made a ward of the State and placed at the Kokomo Academy in the Sexual Perpetrators Program, and he was released from that program on September 17, 2007. On October 21, 2008, the State filed a motion to modify, and on October 24, 2008, he was made a ward of the DOC and placed at the Indiana Boy's School. He was released on January 14, 2011.

[17] About seven months later, on August 23, 2011, the State charged Baughn with child molesting as a class C felony. He was convicted of that offense on January 23, 2012, was sentenced to four years executed in the DOC and ordered to register as a sex offender. Baughn was serving this sentence when he committed the criminal act against Jeremiah. The PSI also notes that the Indiana Risk Assessment System scored Baughn's overall risk to reoffend as

high and noted that he admitted "to drinking prison made alcohol while incarcerated." Appellant's Appendix at 119.

[18] After due consideration of the trial court's decision, we cannot say that the sentence within the parameters of the negotiated plea agreement of thirteen years in the DOC, followed by two years of probation, is inappropriate in light of the nature of the offense and Baughn's character.

## *Conclusion*

[19] For the foregoing reasons, we affirm Baughn's sentence.

[20] Affirmed.

Crone, J., and Pyle, J., concur.