## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2019, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert L. Rivers, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 19, 2019 <br><br> Court of Appeals Case No. 19A-CR-1704 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1702-FA-495 |

**Bailey, Judge.**

# Case Summary

[1] Robert L. Rivers ("Rivers") pleaded guilty to Child Molesting, as a Class A felony,[1] and Sexual Misconduct with a Minor, as a Level 4 felony.[2] Rivers—who is seventy-nine years old—was sentenced to an aggregate term of fifty-two years in the Indiana Department of Correction. He now appeals his sentence.

[2] We affirm.

# Issues

[3] Rivers presents the following issues:

> I. Whether the trial court abused its sentencing discretion by failing to identify Rivers's declining mental health as a mitigating circumstance.

> II. Whether the sentence is inappropriate.

# Facts and Procedural History

[4] In 2017, the State charged Rivers with several offenses, alleging Rivers sexually abused his step-granddaughter, A.C. Rivers sought a competency evaluation, and the court appointed Dr. Carrie Dixon and Dr. Susan Anderson. Dr. Dixon concluded Rivers was competent to stand trial, opining there was "apparent

---

[1] Ind. Code § 35-42-4-3(a)(1) (2012).

[2] I.C. § 35-42-4-9(a)(1) (2014).

malingering on the memory items" tested in the evaluation. App. Vol. II at 52. However, Dr. Anderson concluded Rivers was not competent to stand trial "due to his memory issues which are resulting from vascular changes in his brain as evidenced by the MRI of his brain and the neuropsychological testing." *Id.* at 56. Following these two evaluations, the court ordered a third opinion from Dr. Frank Krause. Dr. Krause found indicators of severe cognitive impairment, opining that Rivers had memory issues and exhibited symptoms of dementia. He concluded that Rivers was not currently competent to stand trial.

[5] The court issued a commitment order and directed the superintendent of the hospital to certify whether Rivers had a substantial probability of attaining competency to stand trial. The court later received a certification that Rivers was competent to stand trial, along with report from Dr. Douglas Morris. The report indicated that Rivers had self-reported memory loss in 2017—not long after the instant charges were filed and the proceedings commenced—and that an MRI was obtained in response to that self-report. Dr. Morris noted that the MRI results revealed diseased areas of the brain, injuries that prior health care providers had determined likely contributed to issues with memory loss. Dr. Morris also noted that "despite obtaining much social history during [the MRI-related] evaluations, it does not appear that [those health care providers] were aware that [Rivers] was facing serious legal charges during his evaluations." *Id.* at 79. Dr. Morris observed that Rivers "displayed behaviors that are highly concerning for malingering" and that there had been a "marked discrepancy" between his claims of memory and functional difficulties and his behavior at the

hospital. *Id.* at 83. Dr. Morris opined that Rivers "previously malingered deficits in . . . cognitive and memory impairments," and Dr. Morris suggested that "further reports of significant deficits in . . . competency-related abilities or cognitive functioning should be viewed with appropriate skepticism." *Id.* at 86.

[6] The trial court scheduled a trial in June 2019. Before the scheduled trial, seventy-nine-year-old Rivers pleaded guilty to two counts: Child Molesting, as a Class A felony, and Sexual Misconduct with a Minor, as a Level 4 felony. The State then sought dismissal of the remaining counts, which the court dismissed.

[7] As to the count of Child Molesting, Rivers admitted he first sexually abused A.C. in 2012, when she was eleven years old and he was in his seventies. One morning on a school day, Rivers approached A.C. and told her she should not be afraid. He began touching her and eventually inserted his penis into her vagina. He told her: "[J]ust know you lost your virginity to me." Tr. at 9.

[8] As to the count of Sexual Misconduct with a Minor, Rivers admitted that, when A.C. was between fourteen and sixteen years old, he told her he wanted to "hit it from behind." *Id.* at 10. Rivers then engaged in anal intercourse with A.C. When A.C. said it felt weird and hurt, Rivers instructed A.C. on how to position her body for him to engage in anal intercourse. Rivers told A.C. that he could not stop himself if she looked at him a certain way. He also told A.C. that he loved her, and he made her promise not to tell anyone. He said to A.C., "[Y]ou don't want to see pawpaw locked up[,] do you?" *Id.*

[9] The trial court accepted the plea and entered judgment on the counts. At an ensuing sentencing hearing, Rivers argued that "when you look at [his] age, his mental health, and tak[e] that into consideration, . . . it should be set forth that he has [an] opportunity to redeem himself." Tr. at 33. Rivers pointed out that "[t]here's GPS monitoring" and "[t]here's in-home detention with GPS monitoring where we can know where he's at 24/7." Tr. at 34. Rivers argued that, through these types of alternative options, he would be able to "get the medical treatment, the mental treatment, and still be punished." *Id.* Rivers asked the court for the opportunity to "not be behind bars when he dies." *Id.*

[10] In an oral sentencing statement, the court observed that Rivers "is an older person who's not in the best health and the consequences for him in terms for the rest of his life may be greater than they would be for a younger person who had committed these crimes." *Id.* The court noted that Rivers nevertheless "chose the time to commit the crime, he chose the setting, he chose the stage of his life to do these things, and he will bear the consequences for those choices." *Id.* The court found two mitigating circumstances—(1) Rivers expressed remorse and (2) he pleaded guilty, thereby accepting responsibility and avoiding having A.C. experience the burden of a trial. The court found three aggravating circumstances—(1) Rivers committed multiple counts that "lasted over a very long time," (2) Rivers has a prior conviction for a sex crime, and (3) Rivers "used his position as a trusted member of the victim's family and as a member of the clergy to access the victim and perpetrate these crimes." *Id.* at 36.

The court imposed a sentence of forty-two years for the Class A felony and ten years for the Level 4 felony. The court ordered consecutive sentences, imposing an aggregate term of fifty-two years in the Indiana Department of Correction.

Rivers now appeals.

# Discussion and Decision

## Sentencing Discretion

Sentencing is principally a discretionary function, and we give "considerable deference" to the court's decision. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). We review its decision for an abuse of discretion, which "occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court." *Bethea v. State*, 983 N.E.2d 1134, 1139 (Ind. 2013).

Pursuant to Indiana Code Section 35-38-1-3, "[b]efore sentencing a person for a felony, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing." If the court identifies aggravating or mitigating circumstances, then the court must enter a "statement of the court's reasons for selecting the sentence that it imposes." I.C. § 35-38-1-3. A court abuses its sentencing discretion by omitting a mitigating circumstance that is "clearly supported by the record and advanced for consideration." *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g*. A court need not identify every mitigating and aggravating circumstance, but it must "identify all *significant* mitigating and aggravating circumstances." *Id.* at 492-93 (emphasis

added).  Moreover, a court is not obligated to explain why it did not find a circumstance to be significantly mitigating.  *Id.* at 493.  Further, "[a]n allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record."  *Id.*

[15]  Rivers argues that the court abused its sentencing discretion because it "failed to recognize . . . mental health as a mitigating circumstance."  Br. of Appellant at 9.  Rivers argues his "declining mental health was supported by the record and significant."  *Id.*  He points out that he underwent "three separate evaluations two of which found him incompetent to stand trial," and that there was "a reference to prior outpatient psychiatric treatment."  *Id.*  He minimizes the evidence of malingering and directs our attention to the evidence of brain disease "and the possibility of decline of [his] neurocognitive functioning."  *Id.*

[16]  In sentencing Rivers, the court acknowledged that Rivers was of advanced age and "not in the best health."  *Id.* at 34.  However, the court did not find that declining health—mental or otherwise—was a significant mitigating factor. Although there was evidence of brain disease and Rivers had previously reported memory issues, two evaluating doctors opined that Rivers was malingering.  One doctor suggested that "further reports of significant deficits in his competency-related abilities or cognitive functioning should be viewed with appropriate skepticism."  App. Vol. II at 86.  Thus, in light of the evidence of malingering, we cannot say the trial court abused its discretion when it did not identify declining mental health as a significant mitigating circumstance.

# Inappropriate Sentence

[17] Indiana Appellate Rule 7(B) permits an appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our review "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Moreover, the "principal role" of our review is to "attempt to leaven the outliers, . . . not to achieve a perceived 'correct' result in each case." *Id.* Indeed, we "reserve our 7(B) authority for exceptional cases," *Livingston v. State*, 113 N.E.3d 611, 613 (Ind. 2018), and deference to the trial court "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)," *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Ultimately, it is the defendant's burden to persuade us that he received an inappropriate sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[18] Regarding the offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Anglemyer*, 868 N.E.2d at 494. As to the Class A felony, Rivers received forty-two years—which is twelve years above the advisory sentence. *See* I.C. § 35-50-2-4 (permitting a sentence between twenty years and fifty years for a Class A

felony, with an advisory sentence of thirty years). As to the Level 4 felony, Rivers received ten years—which is four years above the advisory sentence. *See* I.C. § 35-50-2-5.5 (permitting a sentence between two years and twelve years for a Level 4 felony, with an advisory sentence of six years). The court imposed consecutive sentences, for an aggregate sentence of fifty-two years in prison.

[19] As to the nature of the offenses, Rivers directs us to no evidence portraying the sexual abuse of his step-granddaughter in a positive light. We discern none. Rivers points out that A.C. "seemed resilient and empowered" and "gracefully forgave Rivers for his crimes." Br. of Appellant at 11. However, the resilience and grace of a victim is not a circumstance supporting sentence revision. *See* Ind. Appellate Rule 7(B) (requiring us to focus on the "nature of the offense" and the "character of the offender"—not the character of the victim).

[20] As to the character of the offender, Rivers notes that he is seventy-nine years old and that the aggregate sentence of fifty-two years "is essentially a life without parole sentence." Br. of Appellant 11. Yet, as the court pointed out, Rivers elected to commit serious felonies in his seventies. His advanced age does not bear on his character—nor does, as Rivers argues, any evidence related to deteriorating physical and mental health. Although Rivers expressed remorse and elected to plead guilty, he nevertheless took advantage of a position of trust and molested his step-granddaughter. He urged her to remember losing her virginity to him while asking her to keep things a secret, attempting to make A.C. feel bad about the prospect of him going to prison. Moreover, Rivers has a prior conviction for attempted sexual assault.

[21] Having reviewed the matter, Rivers has not persuaded us of exceptional circumstances warranting revision of his sentence under Appellate Rule 7(B). We therefore decline to disturb the sentence imposed by the trial court.

[22] Affirmed.

Kirsch, J., and Mathias, J., concur.