

FILED

Dec 01 2016, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Middleton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 1, 2016<br><br>Court of Appeals Case No.<br>32A01-1603-PC-592<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Rhett Stuard,<br>Judge<br><br>Trial Court Cause No.<br>32D02-1502-PC-3 |

**Altice, Judge.**

## Case Summary

[1] Corey Middleton appeals from the denial of his petition for post-conviction relief. He asserts that the post-conviction court erred in rejecting his claim of ineffective assistance of trial counsel.

[2] We affirm.

## Facts & Procedural History

[3] On December 1, 4, and 5, 2000, undercover officers met Middleton in a van in a Kroger parking lot in Brownsburg and purchased cocaine and ecstasy from him. On the third day, Middleton showed the officers his "baby," a silver .380 caliber handgun that he pulled from his waistband. *Middleton v. State*, No. 32A04-0308-CR-412, *slip op.* at 3 (Ind. Ct. App. June 29, 2004). Middleton told the officers that the handgun might be for sale later. The officers left the van and signaled to other officers to move in. After Middleton was arrested, officers found the handgun under the seat where Middleton had been sitting.

[4] On December 6, 2000, Middleton was charged with Class A felony dealing in cocaine, two counts of Class B felony dealing in a controlled substance, four counts of drug possession, and possession of a firearm by a serious violent felon (SVF). Middleton initially requested that counsel be appointed, but a month later, he retained his own attorney, Robert Williams. During the last pre-trial conference on May 2, 2001, Middleton sought to have Williams replaced. Later, during the same pre-trial hearing, Williams requested to withdraw as Middleton's attorney, citing lack of payment by Middleton. Given that there were only three weeks until the scheduled trial date, the trial court denied both requests.

[5] On May 23, 2001, Middleton failed to appear for his jury trial and was tried *in absentia.* At the start of the trial, Williams informed the court that he had paged

and called Middleton the night before but did not talk to him. Williams also explained:

> [Middleton] was aware this was the final trial date. . . . And he was advised this was a first choice jury trial and the Court denied my motion to withdraw so I talked to him later that day or the following day with the new plea offer from the State. He refused it and I said that was the last day. If he didn't accept that we'd be going to trial on the 23rd. I've had no further contact with him, Your Honor.

*Petitioner's Exhibit 1*, *Transcript* at 52-53.[1] The jury trial proceeded.

[6] During voir dire, Williams posed the following question to prospective jurors:

> I'd ask you, all of you the one question and that is Corey Middleton happens to be a Negro, an African American or Black whatever term is politically correct these days, so I need to ask all of you and remember you're under oath and please don't take that as an affront. I don't mean it as an affront. But I still think in this country there are some racial problems. So my job is to make sure first of all if Corey Middleton, the black man, was sitting there, would any of you have any problems forgetting he's black or forgetting he's white or Indian or Chinese or whatever[?] Does race make any difference to you in these proceedings because if it does we need to know that right now[?]

*Id*. at 92. After a jury was selected, the State presented its evidence. To prove Middleton was an SVF, the State offered into evidence a certified copy of

---

[1] Additional comments by Williams indicate that he last spoke with Middleton the day of or the day after the final pre-trial conference that was held on May 2, 2001.

Middleton's Michigan criminal history that showed he had a prior felony conviction for possession with intent to deliver cocaine (under thirty grams). Williams objected, arguing that Middleton was not there to confirm or dispute its accuracy. The trial court overruled the objection. At the conclusion of the evidence, the jury found Middleton guilty as charged. The trial court merged several of the drug offenses due to double jeopardy concerns.

[7]     In 2002, Middleton was located in Atlanta, Georgia. Middleton was arrested and returned to Indiana. On May 27, 2003, the trial court sentenced him to an aggregate forty-year term in the Department of Correction.[2] Middleton was appointed counsel to pursue a direct appeal. This court affirmed Middleton's SVF conviction, but ordered that the drug possession charges be vacated rather than simply merged. *See Middleton*, slip op. at 130.

[8]     On February 9, 2015, Middleton filed the instant petition for post-conviction relief (PCR),[3] in which he challenged his trial counsel's performance. Specifically, Middleton alleged that his trial counsel was ineffective for (1) failing to adequately investigate,[4] (2) failing to move to bifurcate the SVF offense from the drug offenses; (3) referring to him as a "Negro" during voir dire; (4) failing to object to the admission of evidence concerning a prior drug

---

[2] Middleton was represented at the sentencing hearing by court-appointed counsel.

[3] Middleton filed his first PCR petition, pro se, on November 1, 2004. In his petition he alleged ineffective assistance of both his trial and appellate counsel. He was eventually appointed a public defender. The action, however, was dismissed in 2007 for "lack of action." *Transcript* at 32.

[4] On appeal, Middleton does not advance any argument concerning failure to investigate.

dealing conviction, and (5) failing to communicate to him a plea offer.[5] The post-conviction court held a hearing on November 20, 2015. Middleton did not call Williams to testify. On February 22, 2016, the post-conviction court entered its findings of fact and conclusions of law denying Middleton's PCR petition. Middleton now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[9] In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Id*. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

---

[5] In 2002 Williams was disbarred for serial neglect of several of his clients' legal affairs and for refusing to meaningfully participate in the Disciplinary Commission's prosecution. *See In re Williams*, 764 N.E.2d 613 (Ind. 2002).

[10] A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea*, 983 N.E.2d at 1138. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)).

[11] To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Because a petitioner must prove both deficient performance and prejudice in order to prevail on a claim of ineffective assistance of counsel, the failure to prove either element defeats such a claim. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001).

[12] There is a strong presumption that counsel rendered adequate service. *Bethea*, 983 N.E.2d at 1139. "We afford counsel considerable discretion in choosing strategy and tactics, and '[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'" *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012) (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001)).

## Communication of Plea Offer

[13] The Sixth Amendment right to the effective assistance of counsel extends to plea negotiations. *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012). As the U.S. Supreme Court recognized,

> [t]he reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.

*Id*. at 1407. With this reality in mind, the Supreme Court thus held that, as a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 1408; *see also Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015).

[14] Counsel's effectiveness at the plea stage is reviewed under the two-part test set out in *Strickland*. It has been held that failure to communicate a plea agreement and its terms and conditions constitutes deficient performance. *See Frye*, 132 S.Ct. at 1408; *Woods*, 48 N.E.3d at 381. As held by this court in *Dew v. State*, 843 N.E.2d 556, 571 (Ind. Ct. App. 2006), *trans. denied*, prejudice is established when there is a reasonable probability that the petitioner would have accepted the plea offer that was not communicated to him by defense counsel. As more recently stated in *Frye*, the petitioner must establish that he would have accepted the plea if it had been communicated, that the prosecution would have

adhered to the plea, and that the trial court would have accepted the plea. 132 S.Ct. at 1411.

[15] Here, Middleton claims that Williams failed to communicate to him a plea agreement that called for Middleton to plead guilty to one count of Class A felony dealing in cocaine greater than three grams with the remaining counts to be dismissed and for sentencing to be left to the trial court's discretion. Middleton further claims that he would have accepted the plea agreement had it been communicated to him.

[16] The evidence before the post-conviction court was that Williams appeared at Middleton's jury trial and Middleton did not, having apparently already fled to Georgia. In explaining Middleton's absence, Williams stated:

> [Middleton] was aware this was the final trial date. He was at the Pre-Trial last time we were here [i.e., May 2, 2001]. . . . And he was advised this was a first choice jury trial and the Court denied my motion to withdraw so *I talked to him later that day or the following day with the new plea offer from the State*. He refused it and I said that was the last day. If he didn't accept that we'd be going to trial on the 23rd. I've had no further contact with him, Your Honor.

*Transcript* at 52-53 (emphasis supplied). As noted by the post-conviction court: "Middleton had an opportunity to dispute his attorney's statement to the Court; but he waived it by failing to attend his own jury trial." *Appellant's Appendix* at 60. Likewise, Middleton did not present any evidence at the PCR hearing aside from his own self-serving testimony that would lead to a contrary finding.

[17] Further, Middleton did not call Williams to testify. It is well established that when counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations.[6] *Oberst v. State*, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010), *trans. denied*. The post-conviction court made such an inference here and we cannot say that it was error to do so. Thus, Middleton did not satisfy his burden of showing his counsel rendered deficient performance by failing to communicate a plea offer.

## Bifurcation

[18] Relying on *Pace v. State*, 981 N.E.2d 1253 (Ind. Ct. App. 2013), Middleton argues that Williams was ineffective for failing to file a motion to bifurcate the SVF offense from the drug offenses. The decision regarding whether to file a particular motion is a matter of trial strategy. *Moore v. State*, 872 N.E.2d 617, 620 (Ind. Ct. App. 2007), *trans. denied*. "'To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been

---

[6] Citing *Schmittler v. State*, 93 N.E.2d 184, 191 (Ind. 1950), *overruled in part on other grounds by State v. Lindsey*, 106 N.E.2d 230, 233 (Ind. 1952), Middleton asserts that this presumption applies only in instances where the petitioner "did not produce or at least make an effort to produce the testimony of the witness." Middleton then points to his evidence that Williams had been disbarred over thirteen years prior to the post-conviction hearing and that Williams did not respond to Middleton's request to retrieve his file. Middleton's evidence, however, does not establish that he made any effort to secure Williams's testimony at the post-conviction hearing. Thus, the post-conviction court was left with Middleton's claim that he was not advised of the plea agreement and Williams's direct statement made at the time of trial to the contrary. Under these circumstances, *Schmittler* does not persuade us that the post-conviction court erred in inferring that Williams would not have corroborated Middleton's claim.

successful.'" *Id.* at 621 (quoting *Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002), *clarified on reh'g*, 774 N.E.2d 116 (Ind. Ct. App. 2002), *trans. denied*).

[19] We do not find the decision in *Pace* to be dispositive of the outcome in this case. In *Pace*, the court held that petitioner's trial counsel was ineffective for failing to move to bifurcate the trial of a dealing in amphetamine charge and a charge of unlawful possession of a firearm by an SVF where his status as an SVF was based on a prior conviction for dealing in cocaine. However, the key component of the *Pace* court's analysis was that the petitioner's trial counsel should have been aware of the Supreme Court's decision in *Hines v. State*, 801 N.E.2d 634 (Ind. 2004), which was decided over nine months prior to petitioner's jury trial. In *Hines*, the Supreme Court held that "it was error to refuse a defendant's request to bifurcate a trial where there is an SVF charge and another unrelated felony." The *Pace* court thus found that trial counsel's decision not to request bifurcation was not a reasonable strategic decision in light of *Hines* and that under the circumstances, a motion to bifurcate would have been granted.

[20] Here, like in *Hines* and *Pace*, Middleton was charged with an SVF offense and separate felony offenses. The State established Middleton's SVF status by offering into evidence a certified copy of Middleton's criminal history in Michigan that showed he had prior felony conviction for possession with intent to deliver cocaine (under thirty grams). Middleton would have us hold that in light of the holding in *Hines*, trial counsel's failure to bifurcate amounted to ineffective assistance. The *Hines* case, however, was not decided until several

years after Middleton's trial. It is well settled that "[f]or purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not anticipating or initiating changes in the law." *Woodson v. State*, 961 N.E.2d 1035, 1044 (Ind. Ct. App. 2012) (quoting *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008), *trans. denied*), *trans. denied*. Having been decided well after Middleton's trial, the decisions in *Pace* and *Hines* are not controlling.

In light of his reliance on *Pace*, Middleton has not established his counsel rendered deficient performance. Middleton also has not established prejudice. Indeed, we note there was direct evidence from undercover police officers that Middleton was in possession of and dealing cocaine on multiple occasions. As already acknowledged by this court on direct appeal, there was "significant independent evidence" to support the various drug convictions. As such, we find there was no prejudice resulting from trying the SVF charge with the possession/dealing drug charges.

### Failure to Object to Admission of Evidence

Middleton argues that his trial counsel was ineffective for failing to object to admission of evidence relating to his prior drug dealing conviction on grounds that such violated Evidence Rule 404. In order to prove ineffective assistance due to the failure to object, the petitioner must prove that an objection would

have been sustained and that he was prejudiced thereby. *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind. 1997).

[23] As acknowledged by Middleton, this issue presents the same concerns as the bifurcation issue. We conclude that the outcome is likewise the same. We first note that there is no statutory requirement for bifurcation. Additionally, Middleton's trial counsel was not required to anticipate the development in the law that occurred in *Hines* nearly three years after his trial or in *Pace*, which was decided over ten years after his trial. Thus, at the time of Middleton's trial, there was no precedent or statutory provision that required bifurcation. Without bifurcation, the prosecutor was required to introduce substantive evidence of Middleton's prior conviction to prove his SVF status. Given the state of the law, Middleton has not established that an objection, if made, would have been sustained. Further, as noted above, given the overwhelming evidence in support of his convictions, Middleton cannot show that he was prejudiced by admission of the evidence regarding his prior conviction.

## Comment During Voir Dire

[24] Finally, Middleton argues that Williams was ineffective when, during voir dire, he referred to Middleton as a "negro." *Petitioner's Exhibit 1*, *Transcript* at 92. Trial counsel's full statement is set forth above. Middleton asserts that Williams's use of a racial insult was unnecessary to describe his race, especially

given that he was being tried *in absentia*.[7] He maintains that Williams's conduct in this regard should be deemed to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Appellant's Brief* at 18-19 (quoting *Strickland*, 466 U.S. at 686).

Considering the entire context of Williams's statement, it is evident that Williams's choice of words was in the manner of exploring possible bias of prospective jurors. Even in this context, his choice of words was wholly unacceptable and amounted to deficient performance. Nevertheless, Middleton is not entitled to reversal because he has not established that but for counsel's error, the result of the proceeding would have been different. As noted previously, there was overwhelming evidence to support his convictions.

Judgment affirmed.

Bradford, J., concurs.

Pyle, J., concurs in result with opinion.

---

[7] Although Middleton was not present during his trial, his race was made known to the jury through witness testimony and admitted evidence.

| | |
|---|---|
| Corey Middleton, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 32A01-1603-PC-592 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Pyle, Judge concurring in result with opinion.**

[29]    I concur with my colleagues holding, but I write separately because I believe Middleton's counsel's performance fell below current objective professional norms and also prejudiced Middleton. During voir dire, Middleton's counsel properly explored the issue of race with prospective jurors. However, counsel referred to his absent client as a "Negro." In a sterile environment, this word might not be any more offensive than the next. But, we do not live in a sterile environment. Words have power. Words convey explicit and implicit

meanings they have acquired. While many dictionaries may still define the term "Negro" as "a person of black African origin or descent[,]" it is also cross referenced with the vile slur known euphemistically as "the N-word." OXFORD ENGLISH DICTIONARY, http://www.oed.com (last visited November 21, 2016) [hereinafter OXFORD ENGLISH DICTIONARY]. "Negro" is not a word that is used solely to distinguish one group of society from another; today's usage of this word does not embrace "'that intent . . . . [I]t flows from the fountain of purpose to *injure*.'" Randall Kennedy, NIGGER: THE STRANGE CAREER OF A TROUBLESOME WORD 5 (2002) (quoting Hosea Easton, *A Treatise on the Intellectual Character and Civil and Political Condition of the Colored People of the United States: and the Prejudice Exercised Towards Them* (1837)) (emphasis added). For this reason, the United States Census Department, among many other public and private entities, has stopped using the term "Negro" on census surveys.[8] H. Yen, *US stopping use of term 'Negro' for census Surveys*, ASSOCIATED PRESS, Feb. 5, 2013. The United States Army has also followed suit. Associated Press, *Army drops use of the term Negro in document*, WASHINGTON POST, (Nov. 6, 2014). While these are relatively recent examples of what has long been understood, it seems likely that Middleton's counsel also understood the gravity of his choice of words; he quickly tried to correct himself and reframe his error under the guise of "political correctness."

---

[8] "'Negro' is still, however, used in positive contexts as part of the names of certain organizations, particularly the United Negro College Fund, and in historical context, with reference to baseball's Negro Leagues." OXFORD ENGLISH DICTIONARY.

[30] In the context of a criminal jury trial, counsel's use of the term "Negro" to refer to his client in front of the potential jurors, who would determine whether he was guilty or not, goes far beyond "political correctness." The right to counsel is constitutional and indispensable to the fair administration of justice. *See Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). Connected to this right is counsel's legal duty to defend Middleton, to advocate for him, and to not act against his interests. IND. ADMISSION AND DISCIPLINE RULE 22. While counsel properly performed many other tasks on behalf of his client, he also prejudiced his client. Before evidence had even been introduced, potential jurors saw and heard Middleton's attorney, the person who was supposed to be his advocate, refer to Middleton in a racially offensive manner. While there is no evidence that counsel intended harm to Middleton, the harm was nonetheless inflicted. Middleton was presented to potential jurors in a racially offensive manner. For these reasons, I believe counsel's performance during voir dire was deficient and also prejudiced Middleton. Nonetheless, in order for us to reverse the trial courts denial of Middleton's petition, we would have to believe that "but for counsel's errors, the result of the proceeding would have been different." *Oberst v. State*, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010). In this case, the evidence against Middleton was considerable. As a result, I am not convinced that the result would have been different.