138 Nev., Advance Opinion 2

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SEAN MAURICE DEAN,<br>Appellant,<br>vs.<br>AITOR NARVAIZA, ELKO COUNTY<br>SHERIFF,<br>Respondent. | No. 81209 |

**FILED**

JAN 13 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Fourth Judicial District Court, Elko County; Alvin R. Kacin, Judge.

*Reversed and remanded.*

Lockie & Macfarlan, Ltd., and David B. Lockie, Elko,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Tyler J. Ingram, District Attorney, and Mark S. Mills, Deputy District Attorney, Elko County,
for Respondent.

_____

BEFORE THE SUPREME COURT, HARDESTY and STIGLICH, JJ., and GIBBONS, Sr. J.[1]

_____

[1]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

22-01348

*OPINION*

By the Court, STIGLICH, J.:

In this appeal, we consider whether a defense attorney's overt interjection of racial stereotypes into a criminal trial constituted ineffective assistance of counsel. In conducting voir dire, counsel discussed several offensive racial stereotypes. Because counsel carelessly introduced racial animus into this criminal trial, we conclude that the district court erred in denying appellant Sean Dean's postconviction petition for a writ of habeas corpus, as counsel's performance fell below an objective standard of reasonableness and resulted in prejudice. We therefore reverse the district court's order denying Dean's petition and remand for further proceedings.

*FACTS AND PROCEDURAL HISTORY*

Dean faced charges of attempted murder with the use of a deadly weapon and other related offenses. During jury selection, Dean's counsel asked the prospective jurors if they had any preconceived ideas about African Americans having "certain attributes." None of the prospective jurors answered that they did. Counsel responded "You don't?" Counsel followed this with a discussion involving several offensive racial stereotypes. Counsel insisted that the prospective jurors must have heard that all African Americans "like watermelon" or "have an attribute of violence, that they are sneaky." Again, no one on the venire responded.

Eventually, one outspoken prospective juror rejected counsel's suggestions and asserted that "we're all equal" and that it was "unfair" to make assumptions based on race. Despite this clear disavowal of racial bias, counsel further interrogated this prospective juror with more questions about offensive racial stereotypes, including the following: "[Dean] has a propensity for violence because he is black. You have heard

SUPREME COURT
OF
NEVADA

(O) 1947A

that?" Despite receiving no affirmative response, counsel asked if any of the prospective jurors could not evaluate Dean "as just another guy, not a black guy?"

The jury found Dean guilty of attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon, and battery with the use of a deadly weapon resulting in substantial bodily harm. The district court sentenced Dean to an aggregate prison term of 144 to 372 months. Dean appealed, and the court of appeals affirmed his conviction. *Dean v. State*, No. 74602-COA, 2019 WL 398002 (Nev. Ct. App. Jan. 25, 2019) (Order of Affirmance). Dean filed a timely postconviction petition for a writ of habeas corpus, alleging, among other claims, that counsel was ineffective for introducing racial issues into the trial. After an evidentiary hearing, the district court denied the petition. Dean appealed.

## *DISCUSSION*

Dean argues that counsel's method of broaching the subject of race during voir dire by asking the venire about offensive racial stereotypes constitutes ineffective assistance of counsel. We agree.

To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness and resulted in prejudice such that, but for counsel's errors, there is a reasonable probability of a different outcome in the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). "With respect to the prejudice prong, '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Johnson v. State*, 133 Nev. 571, 576, 402 P.3d 1266, 1273 (2017) (quoting *Strickland*, 466 U.S. at 694). A petitioner must show both

deficient performance and prejudice to warrant postconviction relief. *Strickland*, 466 U.S. at 697. We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

A criminal defendant has a constitutional right to be tried by a fair and impartial jury. *See Turner v. Murray*, 476 U.S. 28, 36 & n.9 (1986). "Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice or predisposition about the defendant's culpability." *Gomez v. United States*, 490 U.S. 858, 873 (1989) (internal citations omitted). In some cases, after weighing the risks and benefits, trial counsel may decide to raise the issue of race and racial prejudice during voir dire. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) (explaining that "counsel had to weigh the potential harm that could flow from a *voir dire* on racial and religious bias against its arguable benefit"); *see also Commonwealth v. Henry*, 706 A.2d 313, 323 (Pa. 1997) ("[R]aising the issue of racial bias may have the adverse effect of emphasizing racial stereotypes by focusing the jurors' attentions on skin color instead of the guilt or innocence of the accused."). And under some circumstances, counsel may be compelled to broach the issue of race. For example, counsel may be ineffective for not asking any individual questions of an empaneled juror "who expressly admitted her racially biased view that black people—including [the defendant]—are inherently more violent than other people." *State v. Bates*, 149 N.E.3d 475, 484 (Ohio 2020). But when probing for racial bias, counsel must discuss the subject in a careful and responsible manner. *See Middleton v. State*, 64 N.E.3d 895, 901 (Ind. Ct. App. 2016) (explaining that counsel referring to his client as a

(O) 1947A

"negro" while exploring potential racial bias during voir dire "was wholly unacceptable and amounted to deficient performance").

In this case, counsel chose to delve into possible racial bias among the prospective jurors but did so in a flawed and inappropriate manner. Among the numerous problematic comments, counsel suggested that all African Americans, and Dean himself, had an "attribute" of being sneaky and violent. Given that Dean faced charges involving violence, we conclude that counsel's conduct went beyond an objectively reasonable inquiry into potential racial bias. We, like the Florida Supreme Court, are concerned that "[t]he manner in which counsel approached the subject [of race] unnecessarily tended either to alienate jurors who did not share his animus against African Americans 'just because they're black,' or to legitimize racial prejudice without accomplishing counsel's stated objective of bringing latent bias out into the open." *State v. Davis*, 872 So. 2d 250, 256 (Fla. 2004). At the evidentiary hearing on Dean's postconviction petition, counsel testified that he sought to bring out the unconscious racial biases present "in all of us." However, counsel's stated goal does not make his method of addressing possible racial bias reasonable. Indeed, at the evidentiary hearing, the State described the outspoken prospective juror as "offended" and counsel testified that the prospective juror was "very angry" about the implication that race would factor into his deliberation, which further demonstrates the impropriety of counsel's conduct. *See Mazzan v. State*, 100 Nev. 74, 79-80, 675 P.2d 409, 412-13 (1984) (finding counsel ineffective for, in part, antagonizing the jury). Whether counsel himself believed any of the offensive stereotypes is immaterial because bringing such racial invective into the courtroom cannot be justified. *See Davis*, 872 So. 2d at 253 ("Whether or not counsel is in fact a racist, his expressions of

prejudice against African-Americans cannot be tolerated."). In particular, we are troubled by counsel's comment that "[Dean] has a propensity for violence because he is black." This comment came after the outspoken prospective juror rejected the idea of making any assumptions based on race. Rather than ending this line of inquiry, counsel chose to ask more problematic racial questions and undercut his stated purpose of challenging the prospective jurors' unconscious feelings about race. Based on the foregoing, we conclude that counsel's conduct constituted deficient performance, as we discern no reasonable basis for his method of exploring possible racial bias among the prospective jurors.

We next consider whether that deficient performance prejudiced Dean. Under the facts in this case, we conclude that counsel's offensive discussion about race resulted in prejudice. First, of particular note, counsel's repeated suggestion that African Americans are inherently violent severely compromised Dean's defense that he did not wield a knife during the altercation and the victims stabbed each other. *See Strickland*, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). Next, counsel's suggestion that African Americans are "sneaky" potentially undermined his own client's credibility, particularly in this case where Dean testified at trial. Lastly, counsel created an unacceptable risk of infecting the jury's deliberations because his statements "appealed to a powerful racial stereotype—that of black men as violence prone," *Buck v. Davis*, 580 U.S. ___, ___, 137 S. Ct. 759, 776 (2017) (internal quotation marks omitted). Because counsel suggested that Dean "has a propensity for violence" based on his race, we do not believe that

counsel's concluding remarks about not evaluating Dean by his race cured the prejudicial effect of counsel's earlier statements about African Americans. Based on counsel's poorly designed introduction of offensive racial stereotypes into the jury-selection process, we do not have confidence in the outcome at trial, as counsel's conduct created a reasonable probability of an unreliable conviction. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Davis*, 872 So. 2d at 255 (finding that counsel's conduct in discussing racial prejudice "created a reasonable probability of unreliable convictions"). Because Dean's counsel performed deficiently and that performance resulted in prejudice, we conclude that Dean received ineffective assistance of counsel at trial.

We must also note that, under the facts of this case, the trial court's inaction heightens our lack of confidence in the outcome of the trial. In this case, counsel's conduct of discussing harmful racial stereotypes warranted intervention by the trial judge. Instead, the venire may have seen the judge's silence as normalizing, or even tacitly approving, counsel's offensive questioning. *See Azucena v. State*, 135 Nev. 269, 272, 448 P.3d 534, 538 (2019) ("[J]udges [must] be mindful of the influence they wield over jurors, as a trial judge's words and conduct are likely to mold the opinion of the members of the jury to the extent that one or the other side of the controversy may be prejudiced." (internal quotation marks omitted)). The United States Supreme Court has recognized "that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v.*

*Richardson*, 397 U.S. 759, 771 (1970). Here, the trial court neither cautioned counsel nor canvassed any of the prospective jurors to assess whether the inappropriate comments had any adverse effect. Such actions were needed because "[t]he trial judge has a duty to restrict attorney-conducted voir dire to its permissible scope: obtaining an impartial jury." *Whitlock v. Salmon*, 104 Nev. 24, 28, 752 P.2d 210, 213 (1988). When counsel treads into improper or antagonistic lines of inquiry, it is incumbent on judges to exercise their discretion and reign in such behavior. *See id.* (acknowledging "the absolute right of a trial judge to reasonably control and limit an attorney's participation in voir dire"); *see also* Nev. Code of Judicial Conduct Canon 2, Rule 2.8. Exercising reasonable control over the conduct of counsel safeguards not only the integrity of an individual trial proceeding but also the decorum and public confidence in the justice system as a whole. The district court's duty is particularly critical when it comes to sensitive issues like racial prejudice because vigilance is required from trial courts to combat the corrosive effects of such prejudice in the justice system. As the United States Supreme Court has explained, "[b]ecause of the risk that the factor of race may enter the criminal justice process, we have engaged in 'unceasing efforts' to eradicate racial prejudice from our criminal justice system." *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987) (quoting *Batson v. Kentucky*, 476 U.S. 79, 85 (1986)). Accordingly, counsel's offensive questioning of the venire warranted intervention by the trial court.[2] Thus, we take this opportunity to urge trial judges to exercise reasonable control when counsel exceeds the appropriate bounds of voir dire. *See* NRS 175.031

---

[2]We do not suggest that the court needed to reprimand counsel in front of the venire; rather, the court could have excused the venire or conducted a bench conference to admonish counsel.

(providing that the district court shall allow supplemental examination of potential jurors "as the court deems proper").

*CONCLUSION*

We conclude that counsel's statements impermissibly tainted the jury pool by introducing racial invective into the proceedings. Counsel's performance fell below an objective standard of reasonableness and prejudiced the defense. Accordingly, we reverse the district court's order denying Dean's postconviction habeas petition and remand this matter for further proceedings.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, Sr. J.
Gibbons